MILLER, APPELLANT, *v.* WESTERN UNION TELEGRAPH CO., APPELLEE.

(Decided January 17, 1939.)

Mr. *W. S. Rhotehamel* and Mr. *A. W. Schulman*, for appellant.

Messrs. *Pickrel, Schaeffer, Harshman, Young & Ebeling*, for appellee.

GEIGER, J. This matter is before this court upon appeal from the Court of Common Pleas, on questions of law.

The petition recites that defendant is a corporation engaged in the business of receiving and delivering telegrams and messages and that one Lawrence Whelan was employed by the defendant as a messenger boy, and at the time of the occurrence described was acting within the scope of his employment, to wit, delivering telegrams for the defendant.

It is alleged that on the 11th day of February, about 8:30 p. m., the plaintiff was being driven on Morton avenue in Dayton, in an automobile owned and operated by Burns Crabtree; that when the automobile in which she was riding arrived at the intersection of Morton avenue and Adams street, an automobile being driven by Lawrence Whelan, who was engaged in de-

livering telegrams, entered into the intersection imme-
diately in front of the automobile in which she was
riding, causing her car to collide with the car driven by
Lawrence Whelan; that his car was driven in violation
of certain sections of the ordinances of the city of Day-
ton and of the General Code of Ohio; and that the col-
lision resulted from the fact that Whelan failed to stop
at the intersection.

The answer of the defendant admits the allegations
as to its corporate capacity and business; and that a
collision occurred between the automobile in which the
plaintiff was an occupant and the automobile being
then operated by Whelan. The remainder of the an-
swer is a general denial.

Trial was had, and, upon the submission of plain-
tiff's testimony, a motion was made to direct a verdict
on two grounds, (1) that Whelan was an independent
contractor, and (2) for the reason that Whelan was
acting beyond the scope of his authority when he was
engaged to deliver the messages; that he was engaged
as a bicycle messenger, forbidden to use any other
means of transportation than a bicycle and that he had
no authority to use an automobile. The court properly
overruled the motion on the first reason given (*Miller*
v. *Ins. Co.*, 134 Ohio St., 289, 16 N. E. [2d], 447), and
sustained it for the reason that the contract of agency
between the defendant and its messenger boy consisted
of two parts, first, the delivering of messages, and sec-
ond, the means or instrumentality by which he was to
deliver the messages; that one part of the contract is
as vital as the other. If he was authorized to deliver
messages by motor vehicle there is a question for the
jury, and if he was not authorized to deliver messages
by automobile there is not a question for the jury in
this case. The court on considering the evidence relied
upon the testimony of the superintendent and the mes-
senger boy, both on direct and cross-examination, and
on consideration of all the testimony arrived at the

conclusion that the messenger boy's contract of agency was limited to his operating or delivering messages by bicycle and did not include the operation of a motor vehicle.

Proper proceedings were taken to lodge the case in this court. The assignment of errors is covered in six paragraphs, all to the effect that the court erred in sustaining the motion and directing a verdict.

The questions for consideration are:

(1) Did his contract restrict him to the use of a bicycle so that reasonable minds could arrive at no other conclusion?

(2) If it appears from the evidence that he was not authorized to use an automobile or was confined to the use of a bicycle only, would such facts preclude the recovery of the plaintiff?

It becomes necessary for us to examine the record. Paul F. Emert was the local superintendent, and testified, in substance, that the duty of the boy was to pick up and deliver telegrams on a bicycle; that he was never authorized to use an automobile and could not do so under the assignment that was given to him; that the boy's work was between 3:30 in the afternoon and 11:30 in the evening; and that on the evening of the accident, messages were being delivered in what was known as "C" zone, which is about three squares from the office. The duties of the messenger boys ranged over the delivery and collection of telegrams, personal notes, packages, clothes and various other articles, for which service, as required, a boy was selected; when the messenger boys are on duty they are subject to call at any time and when they are not delivering messages they remain at the main office to be subject to call; the boys all wore the distinctive uniforms of the Western Union and a badge. On cross-examination the superintendent testified that the boy was engaged as a bicycle messenger to deliver and pick up telegrams, and as a bicycle messenger boy only; that he

was never authorized to use an automobile and was engaged strictly as a bicycle messenger.

There are three classifications of messenger boys, unmounted or walking boys, mounted, which is the bicycle boy, and motor classification of a motor-driven vehicle. Such boys were called walking, bicycle or motor messenger. Each classification had a different schedule of payment, the boys in the different classifications being assigned different schedules. The beginners start on schedule 6, on which schedule Whelan was engaged and he was never at any time on any other schedule and never had any authority to use an automobile in the delivery of telegrams; and he was paid only on schedule 6, which was for bicycle boys only. The bicycles are owned by the messenger boys. If a motor vehicle is used it is also owned by the boy.

We turn now to the testimony of Lawrence Whelan, the driver of the automobile at the time of the accident. He stated on direct examination that he was engaged by the Western Union Telegraph Company as a messenger and was working for the company on the 11th day of February, 1937; that he received some messages to deliver along about seven o'clock; that he delivered one and was going to deliver the other one but for the accident; and that the dispatch clerk gave him the messages at the main office. He described the accident which for the purpose at hand is not important.

On cross-examination he answered affirmatively the question that he was employed to deliver telegrams and run errands and perform errands for the company on a bicycle only, and that he had no authority to use other means of conveyance and that he was engaged to deliver telegrams on a commission basis only, receiving commission on each telegram delivered and each errand performed; that the bicycle belonged to him and the automobile to his father; that no one connected with the Western Union Telegraph Company

ever authorized him to use an automobile in delivering telegrams.

On redirect examination he stated that he was employed by the general superintendent and that nothing was said against him using an automobile, but that he had the automobile at the time he was hired; that there was nothing said regarding means of transportation he was to use. On recross-examination he was asked if he was engaged as a bicycle boy only and he answered:

"A. I was engaged as a bicycle messenger.

"Q. And you were engaged to deliver telegrams, and run errands with the use of a bicycle only. A. There was nothing specified about a bicycle only.

"Q. And you were employed on a schedule calling for the use of a bicycle only, were you not? A. I was employed on a schedule as a messenger. I suppose I was—there was never any agreement made I was supposed to use a bicycle only."

The testimony of these two witnesses constitutes all the evidence in reference to what may have been said as to the right of a messenger boy to use an automobile in the delivery of messages and performance of the services for which he was employed.

Would reasonable minds necessarily come to the same conclusion in reference to this matter?

Withholding, however, our final conclusion upon this matter, we will examine the question as to whether the instrumentality used by the boy, whether permitted or forbidden, in delivering the messages would control the right to recover. Numerous cases have been cited, all of which we have examined. It is maintained by the defendant that there is a clear distinction between contractual relations and liability rising out of a tort.

While we have examined all the cases cited by both plaintiff and defendant, we will not endeavor to comment on all, or to comment in detail on those from which we may quote. We find a number of cases out-

side the state of Ohio definitely relating to messenger boy service which have made distinct holdings.

In the case of *Hughes* v. *Western Union Telegraph Corp.*, 211 Iowa, 1391, 236 N. W., 8, it is held:

"A telegraph company is not responsible for the act of its messenger in borrowing an automobile with which to make a delivery of a message when the usual and ordinary way of making delivery was by means of a bicycle, and when the borrowing aforesaid was wholly unauthorized by and unknown to the company."

In the case of *Western Union Telegraph Co.* v. *Hinson*, 191 Ark., 617, 87 S. W. (2d), 66, it is held:

"Telegraph company not liable for injuries sustained by pedestrian who was struck by automobile driven by messenger making a delivery, where messenger had been instructed not to use automobile in company's business."

In *McCaughen* v. *Missouri Pac. Rd. Co.* (Mo.), 274 S. W., 97:

"Evidence, in action against employer to recover damages for negligent operation of automobile owned by employee, that driver was acting within scope of his employment, standing alone, *held* insufficient to warrant submission to jury question of whether driver was authorized by defendant to use automobile.

"Use of automobile owned by employee in employer's business on a single occasion *held* insufficient, in action against employer for negligence in its operation, to warrant submitting question of whether employer authorized its use in his business on other occasions."

There are kindred cases not directly relating to service of telegraph companies.

In *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Robinson*, 117 Ark., 37, 173 S. W., 822, where the company employed a call boy to call its train crews, who, in the performance of his duty, riding a bicycle, ran into the plaintiff, it was held that the railroad com-

pany was not liable, there being no evidence to warrant a finding that the bicycle was necessarily used in the service of the railroad company by the call boy with the knowledge of its servants of the use and necessity therefor, and that therefore there was no negligence shown on the part of the defendant company.

In *Wilson* v. *Pennsylvania Rd. Co.*, 63 N. J. Law, 385, 43 A., 894, the plaintiff was struck by a wagon belonging to an express company, driven by persons employed by the railroad company to carry mail, which previously had been carried on foot or in a push cart. The court held that as there was no proof that 'the defendant had authorized its servant to use a wagon, the plaintiff should have been nonsuited.

These cases are replete with citations and comments that may be of interest in this action, but space will not permit.

We note some of the Ohio cases cited, with restricted comments.

*National Liberty Ins. Co.* v. *Sturtevant-Jones Co.*, 116 Ohio St., 299, 156 N. E., 446, 52 A. L. R., 705, relates to the unauthorized acts of servants while the servant is in the possession of the bailment by authority of the bailee, and it is held that no unauthorized act is effective to abrogate the contract nor to absolve the bailee. This is a very instructive case and we find it of interest, but it does not coordinate with the case at bar, for the reason that there was a contract between the bailor and the bailee for the delivery of the bailment. There was no contract between the telegraph company and the person injured. Had the action been one for damages brought by a person to whom a telegraph message was addressed for failure to deliver the message, then the case and its reasoning would be controlling.

In the case of *Lima Ry. Co.* v. *Little*, 67 Ohio St., 91, 65 N. E., 861, it is held that the master is not liable for the negligence of the servant, if, at the time, the

servant was not engaged in the service of his employment. The court on page 97, holds, in effect, that to make the master responsible, the act of the servant must be done in the course of his employment, that is, under express or implied authority of the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged cannot be regarded as the act of the master.

The case of *White Oak Coal Co.* v. *Rivoux, Admx.*, 88 Ohio St., 18, 102 N. E., 302, 46 L. R. A. (N. S.), 1091, holds that the owner of an automobile is not liable for injuries to a third person caused by the negligence of the employee in the operation of the automobile, unless it is proven that the employee at the time was engaged upon the employer's business and acting within the scope of his employment. The fact that the automobile was owned by the defendant and was negligently operated by an employee does not make a *prima facie* case of negligence against the owner, unless it appears that the employee was driving the automobile with authority, express or implied, of the owner.

While this case related to an automobile owned by the defendant and driven by the employee, yet there is much of interest in the decision. In the case at bar the automobile was not owned by the employer but by the father of the boy.

The case of *Waldron* v. *New York Central Ry. Co.*, 106 Ohio St., 371, 140 N. E., 161, which may be designated as the "woodchuck case," has many features closely touching the case at bar. An employee of the company had charge of a certain mileage of the right of way of the defendant railroad, and in order to further his duties he sought to destroy marauding woodchucks by the use of a rifle, which, when being unloaded, was discharged, wounding a fellow workman. The court states that the evidence is ample to make a

case of actionable negligence against Norris, the foreman, who was handling the rifle. The court charged the jury, in substance, that even though the section boss had no express authority to use the gun, if in procuring it he was carrying out and performing his duty as section boss and furthering his master's business, and at the very time of the shooting he was still engaged as section boss and the negligent act was committed in furthering such business, and was an incident to his efforts to further the business and for the protection of the defendant, and to accomplish better what his duties were as section boss, then the jury would be justified in finding that he was acting within the scope of his authority as such section boss.

The court, on page 377, quotes Mechem on Agency to the effect:

"It is uniformly held that the important inquiry is not whether the agent was authorized to do the particular act complained of. Presumably a principal never authorizes his agent to do a negligent act or a malicious act, and yet the principal is liable if his agent injures another while acting in the course of his employment and within the scope of his authority."

31 Cyc., 1585, is quoted:

"The act of an agent is within the course of his employment when the agent in performing it is endeavoring to promote his principal's business within the scope of the actual or apparent authority conferred upon him for that purpose."

The final test is whether the boy, in using the automobile was "within the scope of the actual or apparent authority conferred upon him for that purpose."

Counsel for plaintiff insist that the instant case falls within the rule laid down in *Willbarger* v. *Co-Op Cab Co.*, 26 Ohio Law Abs., 257, decided by this court. We think there is a clear distinction in that in that case the instrumentality causing the damage was entrusted to the agent of the defendant who was authorized to

transport passengers. Had the defendant in this case furnished the boy an automobile and laid down certain restrictions as to its operation, the violation of those restrictions would not have relieved the defendant for the negligent act of its servant.

The case of *Miller* v. *Metropolitan Life Ins. Co.*, 134 Ohio St., 289, 16 N. E. (2d), 447, is cited by both counsel as maintaining the position of each. This is the latest pronouncement of the Supreme Court on this question. A life insurance solicitor was employed by the company to solicit and sell insurance, etc. Means of transportation were not furnished by the company, nor was the solicitor expressly required to use an automobile. He used his own automobile, but was allowed nothing for its maintenance. The district manager testified that he had knowledge of the use of the automobile and expressed no objection. While on duty, the solicitor injured the plaintiff. The action was brought alleging that at the time of the accident, the agent was acting within the course and scope of his employment. The court overruled a motion to arrest testimony and direct a verdict and submitted to the jury the question whether the defendant had impliedly authorized the use of the car by the agent, and whether the agent was acting within the scope of his employment at the time of the accident. The jury returned a verdict for the plaintiff.

The decision was by the court, and on page 293, the court holds, in substance, that with respect to the principal's liability for the torts of his agent, the following test is generally applied: First, was the act, out of which the tort arose, one which has been authorized expressly or by implication by the employer; second, was the act, out of which the tort arose, one performed in the course and scope of the employment? If these questions are answered in the affirmative, the doctrine of *respondeat superior* is applicable and liability attaches to the employer; otherwise not.

It is held that the question whether the agent had authority, express or implied, to use his own automobile in the discharge of his duty is one of fact to go to the jury. From the evidence introduced, different conclusions are possible. Consequently, submission of this question to the jury was proper.

The court then proceeds to analyze the evidence and holds that while the district manager gave to the agent no authority to use his automobile, and consent was neither sought nor given, he knew that the agent sometimes used an automobile, but expressed no objection thereto, and thus the use of an automobile, though not expressly required, was nevertheless allowed, and though not expressly authorized, was not expressly forbidden. Its use continued and acquiescence continued with it. Continued acquiescence in the performance of a previously unauthorized act ripens into tacit approval and authorization. It was held that where an insurance agent uses an automobile, with knowledge of his employer, repetitious use by the agent, without express disapproval by the employer, will be treated as a use with implied authority.

And further, at the time of the commission of the tortious act he was engaged in the performance of the duties of his employment and in the course thereof. These elements considered together are sufficient to fix liability upon the defendant for the negligent acts of the agent. It is urged by defendant, in the instant case, that the decision is bottomed on the evidence that the district manager had knowledge of and acquiesced in the use of the automobile, and that such known use, without express disapproval, will be treated as a use with implied authority.

The court distinguishes the case from that of *Metropolitan Life Ins. Co.* v. *Huff*, 128 Ohio St., 469, 191 N. E., 761, for the reason that Risley was district manager at the time the agent was employed; that he prescribed the work to be done by the agent; that Risley

had knowledge of the fact that Evans was using an automobile, and at no time made any objection thereto.

It is distinguished from the case at bar for the reason that the boy, in this case, had never used the automobile before the night of the accident; that the district manager had no knowledge of its use and could not have acquiesced in such use, and that there could be from the facts disclosed no implied authority.

*Metropolitan Life Ins. Co.* v. *Huff, supra,* holds that when at the close of plaintiff's evidence reasonable minds can reach no conclusion except in favor of the defendant, it is error for the trial court to overrule the defendant's motion for a directed verdict.

That case seems to go only to the fact that the evidence of the plaintiff in reference to the acts of the company did not disclose that the employees of the company, whose acts were testified to, were in a position to bind the company and that therefore all the evidence was incompetent, and that there remained no evidence upon which to base a verdict.

That is not so in the instant case. Emert was unquestionably the general agent of the company, having authority to employ messenger boys and control their actions. This distinguishes the instant case from the *Huff* case.

This brings us to the question as to whether the court erred in this particular case. The rule is well stated in *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St., 167, 160 N. E., 683:

"Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that province of the jury."

There is evidence in the instant case that the boy was required to deliver the message to an address on Lutz avenue, between two and one-half and three miles from the Jefferson street office. While the distance was long and some of it uphill, it could readily be done on a bicycle. There was no authority, express or implied, that the boy could use an automobile in the delivery. The act of the boy in using an automobile was beyond the scope of his employment, and reasonable minds could not differ on this point. *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469, 189 N. E., 246, paragraph 3 of the syllabus.

The company was not liable for this tortious act. The judgment of the court below is affirmed.

*Judgment affirmed.*

BARNES, P. J., and HORNBECK, J., concur.