MARTIN et al., Appellants and Cross–Appellees,

v.

CENTRAL OHIO TRANSIT AUTHORITY et al., Appellees and Cross–Appellants.

[Cite as *Martin v. Central Ohio Transit Auth.* (1990), 70 Ohio App.3d 83.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1371.

Decided Oct. 25, 1990.

*Lancione Law Offices* and *Robert M. Lancione,* for appellants and cross-appellees.

*Crabbe, Brown, Jones, Potts & Schmidt, Larry H. James* and *William H. Jones,* for appellee and cross-appellant Central Ohio Transit Authority.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A., Thomas E. Boyle* and *John T. Kelly; Chorpenning, Good & Mancuso Co., L.P.A.,* and *Darin G. Kendall,* for appellee and cross-appellant Claude Curtis.

———————

REILLY, Presiding Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas. The trial court granted summary judgment to defendant Claude Curtis ("Curtis") and denied summary judgment to defendant Central Ohio Transit Authority ("COTA"). Plaintiffs LaMonte Martin and his mother, Vivian Martin, appeal, asserting the following assignments of error:

"I. The trial court committed prejudicial error when it failed to consider in a summary judgment proceeding the transcript of criminal trial testimony which testimony relates to the incident at issue.

"II. The trial court committed prejudicial error when it found that there were no genuine issues of material facts that defendant Claude Curtis was entitled to summary judgment as a matter of law.

"III. The trial court committed prejudicial error when it found that there was no genuine issue of material fact as to whether defendant Claude Curtis was privileged in using deadly force in self-defense."

Curtis has filed a cross-appeal, advancing the following assignment of error:

"The trial court, fully advised of the facts and circumstances of the pending action, erred in not making a specific determination as to the appropriateness of Central Ohio Transit Authority's (COTA's) refusal to defend its employee, the Cross–Appellant herein, Claude Curtis pursuant to Revised Code § 2744.-07(C)."

COTA has filed a cross-appeal, assigning the following errors:

"I. Appellants alleged that the trial court committed prejudicial error when it failed to consider in a summary judgment proceeding the criminal transcript from the case of *Ohio v. Kevin D. Hopewell,* Franklin County Municipal Court, Case No. 86–6895–1–2.

"II. Appellants allege that the trial court committed prejudicial error when it found that there were no genuine issues of material facts and that defendant, Claude Curtis, was entitled to judgment as a matter of law.

"III. Appellants allege that the trial court committed prejudicial error when it found that there were no genuine issues of material facts as to

whether defendant, Claude Curtis, was privileged in using deadly force in self-defense.

"IV. Defendant–Appellee and Cross–Appellant, Claude Curtis, stated that the trial court, fully advised of the facts and circumstances of the pending action erred in not making a specific determination to the appropriateness of Central Ohio Transit Authority's (COTA's) refusal to defend its employee, Claude Curtis, pursuant to Ohio Revised Code Section 2744.07(C).

"V. Defendant–Appellee and Cross–Appellant, Central Ohio Transit Authority, states that the trial court erred in overruling COTA's motion for summary judgment."

Plaintiff LaMonte Martin was shot by Curtis on a COTA bus parked near Northland Shopping Mall. Prior to the shooting, Curtis, a COTA bus driver, had parked his bus and locked the doors so that he could use a restroom in the Sears store at the mall. Several passengers remained on the bus.

While Curtis was in Sears, several young men tampered with the controls of the bus through an unlocked window. Harsh words were exchanged between them and some of the passengers. When Curtis returned and boarded the bus, one of the passengers explained what had happened. The passenger pointed to the youths involved as they entered the bus in an attempt to ride.

Three youths were involved. Kevin Hopewell was the first to enter the bus and stood closest to Curtis. LaMonte Martin stood behind Hopewell near the fare box. Keno Jarrett stood outside the bus near the stairs.

When Kevin first entered the bus he did not pay his fare, but told Curtis that one of his friends would pay it for him. Curtis told Hopewell that he and his companions could not ride the bus because of their prior actions. Whereupon, they exchanged harsh words with Curtis, demanding that they be let on the bus. At this point, one of them pushed Curtis back into his driver's seat.

Curtis reached behind his seat and pulled a revolver out of his camera bag. Curtis, who is right-handed, held up the gun in his left hand to show it to the youths. Instead of retreating, they tried to grab the gun, struggling for some time with Curtis. The gun discharged and the bullet struck plaintiff LaMonte Martin in the chest. The youths, including plaintiff, immediately fled the scene. However, plaintiff's condition worsened. As a result of the wound, he has been in a comatose state since the shooting incident. Subsequently, LaMonte and his mother commenced this personal injury action against defendants COTA and Curtis.

Curtis moved for summary judgment. He attached his affidavit detailing his account of the events. Plaintiffs responded by filing a memorandum contra. In the memorandum, plaintiffs made reference to their deposition of

Curtis and a criminal trial transcript, both of which were previously filed with the court. The criminal trial transcript was a partial transcript of proceedings in *State v. Hopewell*, Franklin County Municipal Court, Criminal Division, No. 86–6895–1–2, unreported. At the criminal trial of Kevin Hopewell, many witnesses testified about the shooting incident. In their memorandum in opposition to summary judgment, plaintiffs referred to portions of this transcript in an effort to establish a genuine issue of material fact.

The trial court found that it could not properly use the *Hopewell* transcript under Civ.R. 56(C). Considering only Curtis's affidavit and deposition, the court found that there was no genuine issue of material fact because Curtis was entitled to qualified immunity under R.C. 2744.03(B). Further, the court declined to determine whether COTA had a duty to defend Curtis under R.C. 2744.07(C) because an action had not been filed for such a determination. The court found no just cause for delay pursuant to Civ.R. 54(B).

In the first assignment of error, plaintiffs contend that the trial court erred in failing to consider the *Hopewell* transcript. Plaintiffs maintain that the *Hopewell* criminal transcript was analogous to an admissible affidavit under Civ.R. 56(C) and, therefore, should have been considered. Alternatively, plaintiffs contend that the trial court should have allowed them to supplement the record with an admissible deposition or affidavit.

Civ.R. 56(C) provides, in part:

"Motion and Proceedings Thereon. The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party prior to the day of hearing may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *No evidence or stipulation may be considered except as stated in this rule.* * * * " (Emphasis added.)

The court found that it could not consider the *Hopewell* transcript because it " * * * arose from an action separate and apart from the case at bar and involved different parties, issues, and counsel." Hence, the court concluded that the transcript could not be considered as " * * * transcripts of evidence in the pending case, * * * " as stated in Civ.R. 56(C).

As Civ.R. 56(C) expressly provides, no evidence or stipulation may be considered except as stated in the rule. The summary judgment rule specifies the evidence that may be considered. This has been the law since pre-rule

practice. See *Morris v. First Natl. Bank & Trust Co. of Ravenna* (1968), 15 Ohio St.2d 184, 44 O.O.2d 153, 239 N.E.2d 94.

■ The proper procedure for the introduction of evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate · the material by reference into a properly framed affidavit. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 515 N.E.2d 632. If there is no objection, then the court in its discretion may consider the material. *Id.* at 222, 515 N.E.2d at 634. The *Hopewell* transcript was not incorporated or authenticated by affidavit, and Curtis objected to its use. Hence, the issue involves defining the term "transcripts of evidence in the pending case."

In *Carrabine Constr. Co. v. Chrysler Realty Corp.* (1986), 25 Ohio St.3d 222, 25 OBR 283, 495 N.E.2d 952, the Supreme Court held that a transcript of oral testimony adduced at a prior summary judgment proceeding could properly be considered at a second summary judgment proceeding even though, as oral testimony, the evidence was inadmissible in the first instance. The court found that the transcript was within the Civ.R. 56 term "transcripts of evidence in the pending case." The court also found that the transcript was reliable evidence because it was " * * * sworn testimony in a court of law at a hearing in which opposing counsel was present." *Id.* at 226, 25 OBR at 285, 495 N.E.2d at 955. See, also, *Barazzotto v. Intelligent Systems, Inc.* (1987), 40 Ohio App.3d 117, 532 N.E.2d 148 (transcript of earlier arbitration proceeding may support a motion for summary judgment).

Plaintiffs rely on *Napier v. Brown* (1985), 24 Ohio App.3d 12, 24 OBR 33, 492 N.E.2d 847, for the proposition that a transcript can be considered analogous to an affidavit and thus admissible for the purpose of summary judgment. The *Napier* court construed Civ.R. 32 and Civ.R. 56(C) and held that a deposition containing sworn statements of a deponent based on personal knowledge, taken prior to the joinder of a party, may be considered as an affidavit in opposition to a motion for summary judgment to determine whether a genuine issue of material fact exists, as long as the deponent is presently available to testify should there be a trial. But *Napier* involved the use of a deposition, not a transcript. Hence, even if we were to follow *Napier*, that case would not be controlling.

The trial court applied the plain meaning of the term "transcripts of evidence in the pending case." Given the record before this court, it cannot be said that the trial court erred in declining to consider the *Hopewell* transcript. First, this issue was preserved by a proper objection. Second, there is no indication that the *Hopewell* witnesses were available for trial, which the *Napier* court concluded was necessary in order to consider the material analogous to an affidavit. Third, there is no indication that the *Hopewell*

witnesses were unavailable under Evid.R. 804(B)(1). Fourth, the *Hopewell* transcript did not arise from a pending civil case against the same defendants and with the same counsel.

■ Although the factual evidence in the *Hopewell* transcript originated from the same transaction or occurrence between the parties, and logically that evidence would fit within the structure of a summary judgment paper proceeding, the Civil Rule does not include transcripts of other proceedings as materials that may be considered in summary judgment.

■ Likewise, plaintiffs' argument that they should have been allowed to supplement the record is not persuasive. There is no indication that plaintiffs requested such a ruling.

Plaintiffs' first assignment of error is not well taken.

In the second assignment of error, plaintiffs maintain that the trial court erred in finding that there were no genuine issues of fact regarding whether Curtis was entitled to the qualified immunity provided by R.C. 2744.03(A)(6). In the third assignment of error, plaintiffs contend that the trial court erred in finding that there was no genuine issue of material fact as to whether Curtis was acting in lawful self-defense. These assignments of error are interrelated and will be considered together.

R.C. Chapter 2744, Ohio's Political Subdivision Tort Liability Act, provides personal, qualified immunity for employees of political subdivisions. R.C. 2744.03 provides, in pertinent part:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code."

This statute has been held to be applicable to regional transit authorities. *Falzone v. Rutkowski* (1988), 46 Ohio App.3d 166, 546 N.E.2d 449. See, also, *Spitaleri v. Metro RTA* (1980), 67 Ohio App.2d 57, 21 O.O.3d 367, 426 N.E.2d 183.

In this case, it is undisputed that there is no provision in the Revised Code expressly imposing liability upon Curtis. Hence, R.C. 2744.03(A)(6)(c) is not applicable herein. The parties, however, dispute whether the other two exceptions to immunity in R.C. 2744.03(A)(6) are applicable.

Given Curtis's affidavit, his deposition, and the lack of any evidence submitted by plaintiffs, the trial court held that no genuine issue of fact existed as to Curtis's qualified immunity. The trial court found that Curtis attempted to exclude plaintiff and his companions from the bus because he was informed by passengers that the youths had been harassing them and vandalizing the bus. The court further found that, after Curtis prevented them from entering the bus, they began to verbally assault him and threaten his life. This caused Curtis to feel that he, the passengers, and the bus were threatened. At this juncture, Curtis pulled out the gun to deter his attackers, but he did not point the gun at anyone. After the youths went for the gun, Curtis hit Hopewell in the head with it. Hopewell, along with plaintiff, continued to struggle with Curtis and the gun accidentally discharged, injuring plaintiff.

The court expressly concluded that Curtis was not acting outside the scope of employment because he was attempting to exclude the youths in defense of his person, his employer's property, and for the safety of the passengers. Further, the court concluded that Curtis did not act wantonly, maliciously or recklessly. The court also expressly found that Curtis was acting in reasonable self-defense. And, the court held that possession of the weapon on the bus could not be said to establish wanton, malicious or reckless conduct.

On a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The motion may be granted only when it appears from the evidence submitted that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. *Adkins v. Ontario* (1983), 8 Ohio St.3d 45, 8 OBR 406, 457 N.E.2d 317.

Plaintiffs argue that Curtis was acting outside the scope of his employment considering that common carriers owe the highest duty of care for the safety of the passengers. *Jones v. Youngstown Municipal Ry. Co.* (1937), 133 Ohio

St. 118, 10 O.O. 125, 12 N.E.2d 279. Plaintiffs emphasize that Curtis possessed a loaded weapon on a bus full of passengers, which he admitted was in violation of a rule promulgated by COTA. Further, plaintiffs contend that Curtis brandished the weapon when accosted.

R.C. 2744.03(A)(6) does not expressly define the term "scope of employment." However, the term has acquired an accepted meaning, as it has been used in other statutory provisions and at common law. See R.C. 9.86 and 2743.02. The term is drawn from traditional agency law principles governing the vicarious liability of the employer for the acts of his employee.

The Supreme Court discussed this area of law in *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. The court wrote, as follows:

"The term 'scope of employment' has never been accurately defined and this court has stated that it cannot be defined because it is a question of fact and each case is *sui generis*. It has also been stated that the act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it. *Tarlecka v. Morgan* (1932), 125 Ohio St. 319 [181 N.E. 450].

"A servant who departs from his employment to engage in affairs of his own relieves the master from liabilities for his acts. *Railway v. Shields* (1890), 47 Ohio St. 387 [24 N.E. 658]; *White Oak Coal Co. v. Rivoux* (1913), 88 Ohio St. 18 [102 N.E. 302].

"It is recognized, however, that not every deviation from the strict course of duty is a departure such as will relieve a master of liability for the acts of a servant. The fact that a servant, while performing his duty to his master, incidentally does something for himself or a third person, does not automatically relieve the master from liability for negligence which causes injury to another. *Loughead Co. v. Hollenkamp* (1924), 3 Ohio Law Abs. 558.

"To sever the servant from the scope of his employment, the act complained of must be such a divergence from his regular duties that its very character severs the relationship of master and servant. *Amstutz v. Prudential Ins. Co.* (1940), 136 Ohio St. 404 [16 O.O. 572, 26 N.E.2d 454]. See, generally, 36 Jurisprudence 2d, Master and Servant, Section 386 *et seq.;* 53 American Jurisprudence 2d, Master and Servant, Section 426 *et seq.*" *Id.*, 45 Ohio St.2d at 278–279, 74 O.O.2d at 431–432, 344 N.E.2d at 340.

 Conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business. That an employee was acting in violation of some instruction or rule of an employer is generally held to be of

no consequence. *Calhoun v. Middletown Coca–Cola Bottling Co.* (1975), 43 Ohio App.2d 10, 72 O.O.2d 158, 332 N.E.2d 73; *Harriman v. Pittsburgh, C. & St. L. Ry. Co.* (1887), 45 Ohio St. 11, 12 N.E. 451. See, also, Restatement of the Law 2d, Agency (1957) 477, Section 230. But, see, *Miller v. Western Union Tel. Co.* (1939), 63 Ohio App. 125, 16 O.O. 412, 25 N.E.2d 466, and Restatement of the Law 2d, Agency, *supra*, Section 239.

■ Plaintiffs maintain that Curtis acted outside the scope of employment by forcibly preventing the youths from riding the bus. On the contrary, it has been held that a driver of a common carrier has an affirmative duty to protect his passengers. *Cleveland Railway Co. v. Petrushoff* (1925), 4 Ohio Law Abs. 86. Further, many cases have held that a driver, under a limited privilege to eject a passenger for disruptive behavior, is acting within the scope of employment in doing so. Curtis had a duty to protect the fare-paying passengers on the bus and could exclude the youths based on their disruptive behavior. These actions were part of his duties and, hence, were in furtherance of his employer's business. This is so even if he was ill-advised or mistaken. See *Rouda v. Lowry & Goebel Co.* (1917), 9 Ohio App. 91; *King v. Magaw* (1957), 104 Ohio App. 469, 5 O.O.2d 162, 150 N.E.2d 91. Consequently, Curtis was acting within the scope of employment.

Plaintiffs nevertheless contend that the actions of Curtis, ostensibly in self-defense, were outside the scope of his employment. Plaintiffs also claim that Curtis was negligent in possessing and brandishing the gun and that he used excessive force in defending himself.

There was evidence that Curtis was carrying the gun for personal protection, as he had been hospitalized in the past due to a similar attack on the bus. Further, there was evidence that COTA sent out a letter to employees prohibiting the carrying of weapons and that COTA was aware that some drivers carried weapons. As to the incident in question, Curtis said that he feared for his life. He said the youths on the bus told him that they were going to kill him and that one of the youths had a knife.

■ Generally, one has a right to defend oneself by force, if that force is not excessive. *Close v. Cooper* (1877), 34 Ohio St. 98. The force used to defend must be necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended. This is an objective test. *Pletcher v. Younker* (1932), 44 Ohio App. 80, 184 N.E. 404. Similarly, the degree of care required in the lawful handling of firearms is ordinary care commensurate with the gravity of the danger. *Wanyek v. McMullin* (1965), 3 Ohio App.2d 15, 32 O.O.2d 78, 209 N.E.2d 223.

■ Curtis's actions in self-defense were within the scope of his employment. For it cannot be said that his purpose of self-protection, and of protection of the bus and passengers, was not because of his employment and in furtherance of his master's business. Moreover, even if Curtis acted unreasonably, but not wantonly or recklessly, his actions would still be in the scope of employment. For instance, mistakes are sometimes made in judging whether a person is exhibiting aggression. Such mistakes are expected and foreseeable. Hence, they are within the scope of employment.

The evidence shows that Curtis feared for his life. Further, although it is excellent judgment to refrain from displaying a firearm unless one intends to use it, the law of self-defense does not require excellent judgment; it only requires reasonable judgment or ordinary care. There is no evidence which indicates that Curtis was acting maliciously, wantonly or recklessly. He held up the gun in his non-dominant hand to frighten his attackers away and the gun accidentally discharged.

■ Plaintiffs' final argument is that Curtis's possession of the gun was outside the scope of employment and at least reckless. Nevertheless, possession of the gun, although unauthorized, was within the scope of employment. An employer cannot avoid or change the principles of *respondeat superior*, included in the scope of employment concept, by sending out a letter prohibiting certain conduct. Employers do not authorize negligence, but negligence could be within the scope of employment. COTA's letter prohibiting the possession of weapons on buses by drivers only reinforces the conclusion that Curtis's actions were expected and foreseeable. Thus, they were within the scope of employment.

Plaintiffs' second and third assignments of error are not well taken.

■ Curtis advances one assignment of error, alleging that the trial court erred in failing to make a determination as to whether COTA had a duty to defend Curtis. R.C. 2744.07(C) provides:

"If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in division (A)(1) of this section, the employee may file, in the court of common pleas of the county in which the political subdivision is located, *an action* seeking a determination as to the appropriateness of the refusal of the political subdivision to provide him with a defense under that division." (Emphasis added.)

Curtis requested a determination of COTA's duty to defend him by motion in the trial court. However, Curtis never filed against COTA.

In its decision, at pages 5 and 6, the trial court wrote:

"This Court is asked for a specific ruling in regard to COTA's responsibility under R.C. 2744.07 to provide for the defense of movant to the instant action. The Court has been informed that COTA has refused to provide a defense. The Court, as set out above, for purposes of ruling on movant's instant motion has determined movant to, as a matter of law, not have acted 'manifestly outside' the scope of employment. Nevertheless, the Court cannot provide a specific ruling on that question as R.C. 2744.07(C) requires the issue to be raised by the employee filing, 'in the Court of Common Pleas of the County in which the political subdivision is located, an *action* seeking a determination as to the appropriateness of refusal * * *.' (Emphasis added.) Simply requesting the ruling in a Reply Memorandum concerning summary judgment against plaintiff does not appropriately raise the question in a manner contemplated by R.C. 2744.07(C). The Court cannot, at this time, issue the specific ruling requested."

The trial court's decision concerning R.C. 2744.07(C) correctly states that an action may be filed seeking a determination of whether the public employer has a duty to defend. A motion such as the one filed by Curtis does not constitute an action.

Curtis's assignment of error is not well taken.

■■ Defendant COTA has filed a cross-appeal. It also used the *Hopewell* transcript as the only evidence to support its motion for summary judgment. The trial court declined to consider it and consequently denied COTA's motion. The trial court did not make an express determination that there was no just cause for delay. A denial of a motion for summary judgment is not a final appealable order. *State, ex rel. Overmeyer, v. Walinski* (1966), 8 Ohio St.2d 23, 37 O.O.2d 358, 222 N.E.2d 312. Thus, COTA's cross-appeal is dismissed. COTA's first, second and third assignments of error rebut only the arguments presented by plaintiffs. COTA's fourth assignment of error merely rebuts the assignment of error presented by Curtis. As such, these arguments are not well taken. COTA's fifth assignment of error is not properly before this court as it relates to COTA's motion for summary judgment.

Plaintiffs' assignments of error and defendants' assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and MARTIN, JJ., concur.

JOHN D. MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment.