This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Gina Martinez ("Martinez"), appeals the decision of the Summit County Court of Common Pleas granting summary judgment to Appellees Travelers Indemnity Company of Illinois ("Travelers"), Canal Insurance Company ("Canal"), and State Automobile Mutual Insurance Company ("State Auto"). We affirm.
 I.
On January 2, 2001, Martinez was injured in an accident while driving her husband's vehicle. On March 16, 2001, she filed a complaint against the party responsible for the accident, Travelers, Canal and State Auto. At the time of the accident, Martinez was employed at Holland Oil Company, and her husband was employed at Little Tikes. Holland Oil had insurance polices with Canal and State Auto. Little Tikes is a subsidiary of Newell Rubbermaid, Inc. ("Rubbermaid"), which carried an insurance policy with Travelers. Martinez entered into a settlement with the tortfeasor for the amount of $12,500 and dismissed him from the case. Travelers, Canal and State Auto filed motions for summary judgment. On September 13, 2001, the trial court granted summary judgment to Travelers, Canal and State Auto and dismissed Martinez's bad faith claims.
This appeal followed.[1]
 II. Standard of Review
To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case."Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. If the movant meets this burden, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id. at 293.
An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Like the trial court, the appellate court must view the facts in the case in the light most favorable to the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12. Any doubt must be resolved in favor of the non-moving party. Id.
Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v. AmericanUniv. of the Carribean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, and the pleadings. Civ.R. 56(C). If a document does not fall within one of these categories, it can only be introduced as evidentiary material through incorporation by reference in an affidavit. Martin v. Central OhioTransit Auth. (1990), 70 Ohio App.3d 83, 89. Furthermore, "[d]ocuments which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court."Mitchell v. Ross (1984), 14 Ohio App.3d 75, 75.
 III.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR TRAVELERS AS THERE REMAINED A GENUINE ISSUE OF FACT AND LAW AS TO WHETHER ITS INSURED HAD VALIDLY REJECTED [UM/UIM] COVERAGE UNDER OHIO LAW.
In her first assignment of error, Martinez challenges the summary judgment granted in favor of Travelers. Specifically, she argues that Travelers failed to present evidence to demonstrate the existence of a valid offer and rejection of the uninsured/underinsured motorist ("UM/UIM") coverage. Martinez asserts: 1) that Travelers failed to demonstrate that the December 15, 2000 renewal constituted a new contract and 2) that Travelers failed to properly reject UM/UIM coverage pursuant to Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565 and Linko v. Indemn. Ins. Co. (2000), 90 Ohio St.3d 445.
 A. Travelers' Motion for Summary Judgment
In support of its motion for summary judgment, Travelers provided the affidavit of Paula Rawleigh, the director of risk management and real estate for Rubbermaid, and a copy of Rubbermaid's policy with Travelers. Rawleigh states the following. Rubbermaid has continuously held an insurance policy with Travelers since January 1, 1988. Rubbermaid renewed the policy every year including the policy current at the filing of the motion for summary judgment, effective January 1, 2001 to January 1, 2002. Rawleigh annually discussed UM/UIM coverage with Travelers. Rubbermaid's position regarding UM/UIM is to reject the coverage in states, like Ohio, that allow rejection and accept minimum limits in the states where coverage is mandatory. Rubbermaid rejected UM/UIM coverage in its original policy effective January 1, 1988, and rejected UM/UIM coverage in every renewal. Rawleigh authenticates the attached selection/rejection form dated December 12, 2000.
Martinez responded in opposition but did not provide the trial court with any evidence to support her argument that she was entitled to UM/UIM coverage. Instead, Martinez submitted several unauthenticated letters and copies of case law. Martinez argued that UM/UIM coverage existed by operation of law pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660.
We note that the trial court relied on Scott-Pontzer in finding that Martinez was covered as an insured under Travelers' policy. We note that Travelers did not file a cross-appeal challenging the trial court's ruling that Martinez was covered as an insured pursuant toScott-Pontzer. Accordingly, this issue is not properly before this court for review. Our review of the trial court's grant of summary judgment in favor of Travelers is limited to the trial court's determination regarding the validity of Travelers' rejection of the UM/UIM coverage.
 B. December 15, 2000 Renewal Was a New Contract
On appeal, Martinez argues that the trial court failed to properly consider the original 1988 insurance policy and all subsequent renewals to determine if the January 1, 2001 renewal was a "new" contract. Martinez asserts that without such analysis the trial court was unable to determine whether Am.Sub.H.B. 261, effective September 8, 1997 was controlling on the January 1, 2001 policy.
The law in effect at the time a contract for automobile liability insurance is entered or renewed defines the scope of the underinsured motorist coverage afforded by the contract. Ross v. Farmers Ins. Group ofCos. (1998), 82 Ohio St.3d 281, 289. A statute that pertains to a policy of insurance and its coverage, enacted after a policy's issuance, is incorporated into any renewal of the policy if the renewal represents a new contract of insurance separate from the initial policy. Id. at 288-289.
In Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, paragraph one of the syllabus, the Supreme Court of Ohio held that all automobile insurance policies in Ohio have a guaranteed 2 year period during which the policy cannot be altered without the parties' consent. Additionally, the Court held "[t]he commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." Id. at paragraph two of the syllabus.
In the present case, Travelers' original 1988 policy with Rubbermaid was renewed every year. Every other year, the renewal would be considered the commencement of a new contract as mandated by R.C. 3937.31. See id. at paragraphs one and two of the syllabus. On December 15, 2000, Rawleigh renewed Rubbermaid's policy with Travelers. Martinez's accident occurred on January 2, 2001. The January 1, 2001 policy that was in effect on the date of Martinez's accident was a "new contract." See id. Accordingly, the controlling law is the version of R.C. 3937.18 that was in effect on January 1, 2001, which included the 1997 amendments.
 C. Application of R.C. 3937.18
R.C. 3937.18 requires insurers to provide UM/UIM coverage in an amount equal to the amount of any liability insurance provided. If the insurer does not offer the coverage, the coverage arises as a matter of law. However, UM/UIM coverage may be rejected by the insured. The statute has been modified several times over the past few years including: October 31, 2001, September 21, 2000, November 2, 1999, September 3, 1997 and October 20, 1994.
A brief review of the 1994 and 1997 amended versions of the statute is necessary to analyze the effect of the Gyori (1996), 76 Ohio St.3d 565, and Linko (2000), 90 Ohio St.3d 445, decisions regarding the validity of Rubbermaid's rejection of UM/UIM coverage in the present case. The October 20, 1994 version of R.C. 3937.18 contained changes to sections (A) and (C). The 1994 modifications did not address the requirement that insurers had to provide insureds an option to buy UM/UIM coverage in certain amounts or the provision that the insured could reject the coverage.
The September 3, 1997 version made significant changes to section (C), the section dealing with the insured's right to reject UM/UIM coverage. The amended version clarified that "[a] named insured or applicant may reject or accept both [UM/UIM] coverages * * * or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent." R.C. 3937.18(C) (Sept. 3, 1997). Any such choice had to meet the following requirements:
 A named insured's or applicant's rejection of [UM/UIM] coverages * * * or a named insured's or applicant's selection of [lower amounts of] such coverages * * * shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection * * * [or] selection of such coverages * * * shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
Id. In other words, a rejection or selection of lower limits of UM/UIM coverage had to be in writing. Furthermore, a written rejection/selection form created a presumption that the insurance company had offered UM/UIM coverage as required by law. The amended version of R.C. 3937.18 was the law in effect on January 2, 2001, the date of Martinez's accident.
A comparison of the 1994 and amended versions of R.C. 3937.18
demonstrates that prior to 1997, the statute offered little guidance as to the form that an offer or rejection must take in order to satisfy the requirements of subsections (A) and (C). A body of case law resulted from the statute's silence on these issues. See, e.g., Gyori, 76 Ohio St.3d 565.
In 1996, the Gyori Court held that the insurance company's offer and the insured's rejection of UM/UIM must both be in writing, that a written rejection is valid if received before the commencement of the policy and that the insurance company bears the burden of proving the insured made a knowing and valid rejection of UM/UIM coverage. Gyori, 76 Ohio St.2d at paragraphs one and two of the syllabus. In 1997, the legislature responded to Gyori by codifying Gyori's requirement that the insured's rejection must be in writing, that the written rejection must be received prior to the commencement of the policy and by changing the burden that the insurance company bore to prove the insured rejected UM/UIM coverage. R.C. 3937.18 (Sept. 3, 1997).
In 2000, the Supreme Court broadened its interpretation of the 1994 version of R.C. 3937.18, by finding additional requirements for the content of the written offer. Linko, 90 Ohio St.3d at 447-448. In Linko, the Court held that in order to satisfy the offer requirement, the insurer must: 1) inform the insured of the availability of UM/UIM coverage, 2) set forth the premium for the coverage, 3) include a brief description of the coverage and 4) expressly state the UM/UIM coverage limits in its offer. Id.
Martinez seeks to rely on Gyori and Linko to establish the absence of an offer and rejection of the UM/UIM coverage in this case. However, these two cases concern the 1994 version of the statute not the amended version that is applicable to this case. In 1997, the legislature significantly altered the requirements concerning offers and rejections of UM/UIM coverage under R.C. 3937.18. The amendments were apparently in response to the then-recent Gyori decision. While the former statute was silent to the form of offer and rejection, as well as the time by which such rejection must be received, the amended version of the statute spoke directly to each issue. Additionally, the amended version created the presumption of a valid offer from the written rejection. R.C. 3937.18(C) (Sept. 3, 1997).[2]
Pursuant to the amended version of R.C. 3937.18, Rubbermaid properly rejected the UM/UIM coverage. Rubbermaid's selection/rejection form dated December 12, 2000 was a "writing * * * signed by the named insured." R.C. 3937.18(C) (Sept. 3, 1997). The written rejection of UM/UIM coverage was "effective on the day signed," December 15, 2000 and created "a presumption of an offer of coverages consistent with [R.C. 3937.18] (A)."Id.
Travelers met its Dresher burden with the December 15, 2000 written rejection of the UM/UIM coverage. The written rejection form created a presumption of a valid offer. Id. The burden then shifted to Martinez, who failed to meet her Dresher burden. Martinez failed to produce evidence sufficient to defeat the presumption provided for in the amended version of R.C. 3937.18. Accordingly, the trial court did not err in granting summary judgment in favor of Travelers. Martinez's first assignment of error is overruled.
 IV.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CANAL WHERE APPELLANT WAS A "NAMED INSURED" UNDER THE TERMS OF THE POLICY.
In her second assignment of error, Martinez challenges the summary judgment granted in favor of Canal. Specifically, she argues that she is entitled to UM/UIM coverage pursuant to Scott-Pontzer, 85 Ohio St.3d 660. We disagree.
In support of its motion for summary judgment, Canal provided several unauthenticated documents including an accident report, interrogatories and a copy of the insurance policy. A court need not consider such unauthenticated items in ruling on a summary judgment motion. Green v.B.F. Goodrich Co. (1993), 85 Ohio App.3d 223, 228; Clark v. Orrville
(Apr. 19, 1995), Wayne App. No. 2874, unreported at 9. Reliance on unauthenticated documents, however, may be permitted if the opposing party does not object. Green, 85 Ohio App.3d at 228. Because Martinez has not objected, we will consider whether the accident report, interrogatories and insurance policy create any genuine issues of material fact.
In the present case, the Canal policy contains the following:
SECTION C — UNINSURED MOTORISTS INSURANCE
* * *
 II. PERSONS INSURED: Each if the following is an insured
under this insurance to the extent set forth below:
 (a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;
 (b) any other person while occupying an insured highway vehicle; and
 (c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.
We begin with a determination of whether Martinez is an insured under the policy. Our decision is governed by Scott-Pontzer, 85 Ohio St.3d 660. As in Scott-Pontzer, Canal's policy language provides a corporate entity as the sole named insured. The policy does provide for the option of individuals being listed as the "designate insured," however, the policy designated no such individuals. Coverage was provided to the corporation without respect to persons.
 [A] corporation can act only by and through real live persons. * * * [A] corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. * * * [N]aming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees.
Id. at 664. Accordingly, Martinez, as an employee of the named insured, Holland Oil, is an insured for purposes of UM/UIM coverage.
On appeal, Canal argues that assuming arguendo Martinez is an insured, she failed to acquire written consent before settling with the tortfeasor. Canal relies on the policy language and Martinez's interrogatory answers. The policy provides the following exclusion:
The insurance does not apply:
 (a) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor[.]
Martinez states in her interrogatory answers that she received $12,500 from the tortfeasor's insurance with Nationwide Insurance Company. Canal asserts that Martinez settled with the tortfeasor without written consent from Canal and therefore is not entitled to UM/UIM coverage.
Once Canal pointed to the evidence that established Martinez settled without the requisite written consent, the Dresher burden shifted to Martinez to proffer evidence that there was a genuine issue of material fact as to the written consent issue. We again note that Martinez responded in opposition but did not provide the trial court with any evidence to support her argument that she was entitled to underinsured motorist coverage. Martinez failed to present evidence that she received written consent before settling with the tortfeasor.
Canal met its Dresher burden that there was no genuine issue of material fact, that Martinez settled without written consent, and thus was not entitled to UM/UIM coverage under Canal's policy. Martinez failed to respond with evidence demonstrating a material issue of fact regarding her UM/UIM coverage. Viewed most favorably to Martinez, the facts in existence when summary judgment was granted do not show that the trial court erred in granting summary judgment to Canal. Martinez's second assignment of error is overruled.
 V.
Having overruled Martinez's two assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
WHITMORE, J., BATCHELDER, J. CONCUR.
[1] On February 4, 2002, this court granted State Auto's motion to dismiss the appeal as to State Auto for Martinez's failure to raise any assignment of error regarding the trial court's grant of summary judgment in favor of State Auto.
[2] We note that the questions similar to the issues raised in this appeal have been certified to the Ohio Supreme Court in Comella v. St.Paul Mercury Ins. Co. (2001), 93 Ohio St.3d 1444 and Kemper v. MichiganMillers Mut. Ins. Co. (2001), 93 Ohio St.3d 1483. The Ohio Supreme Court declined to answer the submitted questions.