SPITALERI, APPELLANT, *v.* METRO REGIONAL TRANSIT
AUTHORITY ET AL., APPELLEES.

[Cite as Spitaleri v. Metro RTA (1980), 67 Ohio App. 2d 57.]

(No. 9327—Decided January 23, 1980.)

*Mr. Robert W. Blakemore* and *Mr. Jeffrey T. Heintz,* for
appellant.

*Mr. Edward G. Kemp* and *Mr. William G. Trumpeter,* for
appellees.

BELL, P. J. This appeal raises the question of whether
employees of a regional transit authority, as provided for in
R. C. 306.30 *et seq.,* are entitled to the wages and certain
fringe benefits found in R. C. Chapters 121 and 124. The trial

court, in granting defendants' motion to dismiss per Civ. R. 12(B)(6), held such employees are not so entitled. We affirm.

*Facts.*

In August of 1978, the employees of the Metro Regional Transit Authority (Metro), who were also members of the Transport Workers Union of America, Local No. 1, AFL-CIO (Union), went on strike.

Metro thereafter sought an injunction against the Union. The equitable relief requested was based on Metro's premise that its employees were state employees and were, therefore, in violation of state law. While never directly ruling on the issue, the trial court informally notified the Union that it had determined that Metro employees were public employees and, as such, were forbidden to strike. The strike ended.

Plaintiff-appellant, Anthony C. Spitaleri, Sr., after returning to work, submitted a grievance to the Union alleging, *inter alia,* that as a public employee, he was entitled to certain past and future benefits as prescribed in certain sections of R. C. Chapters 121 and 124. The president of the Union refused to process the grievance.

On October 31, 1978, plaintiff filed a class action suit (which is the subject of this appeal) against Metro, its director and trustees, and the Union and its president. The complaint requests a judgment declaring that Metro employees are public employees and are entitled to the benefits due such employees. It also demands $500,000 in damages.

The trial court, upon defendants' motion, dismissed the case for failure to state a claim upon which relief may be granted. Plaintiff argues this is error.

*Law and Discussion.*
*I.*

A resolution of this matter must logically begin with an analysis of R. C. 306.30 *et seq.* These sections provide for the creation of a regional transit authority (RTA) and enumerate its duties, regulations and powers. Plaintiff has emphasized, both here and at the trial level, certain language in R. C. 306.31 (creation of authority), R. C. 306.35 (powers and duties) and R. C. 306.45 (public employees), in support of his position that RTA employees are entitled to the statutory benefits of

vacation leave (R. C. 121.161), sick leave (R. C. 124.38), state holidays (R. C. 124.19) and pay ranges (R. C. 124.15).

Plaintiff's analysis actually involves a two-pronged inquiry. The first question is: To what extent are employees of a regional transit authority public employees within the provisions of R. C. 306.30 *et seq.*? Only if the answer to this question is favorable to plaintiff does the second question have to be addressed, to wit: To what specific benefits are such employees entitled?

We do not believe that a fair and complete reading of the applicable statutory sections leads to the conclusion that the legislature intended RTA employees to fall within the broad statutory ambit of "public employees." R. C. 306.30 *et seq.* is a very specifically-drafted piece of legislation. It painstakingly details the permissible functions and jurisdictional limits of a regional transit authority. It is an unusual piece of legislation because it affords a regional transit authority, as an entrepreneurial entity, a combination of privileges which exists in both the public and private sectors.

In this regard, we are convinced that the trial court was correct when it held that the legislature intended a " 'hybrid' employer with both governmental and private corporate powers." Indeed, this notion is codified in R. C. 306.31, which states, in pertinent part, that:

"***A regional transit authority so created is a political subdivision of the state *and* a body corporate with all the powers of a corporation***." (Emphasis added.)

An authority, such as Metro, is a legislative creation designed to both ameliorate critical urban problems and meet equally critical urban needs. One aspect of the distressing situation is amply illustrated by the history of Metro, itself.

In 1969, the Akron Transit Company went bankrupt. Since it operated under a franchise granted by the city of Akron, the city was forced to revoke its franchise. Finally, in 1972, the issue of establishing a regional transit authority was placed on the ballot and approved. A one mill property tax of ten years' duration was also approved to partially subsidize the bus service. Metro was formed in the same year pursuant to Akron City Ordinance No. 196-1972 and R. C. 306.30 *et seq.*

The record indicates that 25 percent of Metro's revenue comes from the fare box and other related operating revenues.

The remainder is supplied by the federal government (35 percent), local tax levies (25 percent), and, as of 1978, the state of Ohio (15 percent).

The provisions of R. C. 306.30 *et seq.* (particularly, R. C. 306.31 and 306.35) attest to the legislature's awareness of, and sensitivity to, the geopolitical nature of a "regional" (as opposed to a county) transit authority as well as to stark social and fiscal realities. The statutory scheme at issue is nothing more than a codification of the legislature's belief that successful implementation and operation of such a system requires extraordinary duties and powers.

### II.

The above, however, only serves as the framework for the reasons why we must reject plaintiff's claim. We believe that plaintiff's hypothesis, which is composed of isolated phrases and nomenclature present within R. C. 306.30 *et seq.,* is an improper mode of analysis.

Plaintiff is indeed correct when he states that Metro is a political subdivision of the state (R. C. 306.31) with broad "government-like" powers and duties (R. C. 306.35[H], [I], [J] and [K] ). Yet, this, in and of itself, does not make Metro employees "public employees." We must also recognize and consider the wording in R. C. 306.35 which authorizes "corporate-like" powers to Metro. This, of course, is consistent with R. C. 306.31.

Plaintiff heavily relies on the terminology in R. C. 306.45, which states:

"All officers and employees of a regional transit authority shall be considered as public employees within the meaning of section 145.01 of the Revised Code and a regional transit authority, its officers, and employees shall be subject to sections 145.01 to 145.57, inclusive, of the Revised Code."

Plaintiff then extracts the following phrases from R. C. 145.01:

"(A) 'Public employee' means any person holding an office, not elective, * * *and paid in whole or in part by the state or any of the authorities named in this division * * *."

"(D) 'Employer' means the state or any county, * * *. In addition, 'employer' means the employer of employees described in division (A) of this section."

Plaintiff argues that when R. C. 306.45 and the above sections of R. C. 145.01 are read in *pari materia,* the result is that RTA employees are public employees and entitled to the previously mentioned statutory benefits.

We do not agree with plaintiff's conclusion. R. C. 306.45 only states that RTA employees are to be considered public employees *within the meaning of R. C. Chapter 145.* R. C. Chapter 145 is unequivocal as to its subject matter, *i.e.,* the Public Employees Retirement System (PERS). We view the result of integrating R. C. 306.45 and R. C. 145.01 as exemplifying a legislative intent that RTA employees are to be public employees for the specific and limited purpose of participating in PERS. It can be argued, persuasively, that if RTA employees were intended to be public employees for all purposes, then there would have been no need for R. C. 306.45. Such a conclusion is not only harmonious with what we have characterized as the "hybrid" nature of a RTA, but also with the definition section of R. C. 145.01, when read *in toto.*

For this reason, we find, unpersuasive, plaintiff's argument that RTA employees are public employees because they are "paid in whole or in part" by the state *or any of the authorities* named in R. C. 145.01(A). First, we reiterate that that phrase ("paid in whole or in part" by the state) falls within the auspices of R. C. Chapter 145, only. Along the same line, we note that the above italicized language is necessary if RTA employees are to qualify for PERS coverage. R. C. 145.01(A) and (D) serve as a prerequisite to, and the requisite elements for, the applicability of R. C. Chapter 145 to R. C. 306.30 *et seq.,* or vice versa. It does not imply the amorphous interpretation which plaintiff suggests.

Second, we suggest that simply because Metro receives *subsidies* from the state of Ohio (15 percent of its revenue, as of 1978), it does not follow that Metro employees are paid by the state and, therefore, are public employees. See 1961 Ohio Atty. Gen. Opinions No. 2038, page 94. Moreover, subsidies to a RTA in the form of grants and loans from a host of sources are statutorily authorized, if not also encouraged, in R. C. 306.35(R). The record indicates that Metro receives funds from the Ohio Department of Transportation as part of the Ohio Public Mass Transportation Grant Program and that these funds are used for operating expenditures and capital

improvements. This clearly falls within the purview of R. C. 306.35(R).

### III.

Aside from our holding that R. C. 306.31, 306.35 and 306.45 (whether taken alone or in the aggregate) do not place RTA employees within the broad ambit of "public employees," other equally impressive factors exist which compel the same conclusion.

R. C. Chapter 306 contains provisions for both a "regional transit authority" (R. C. 306.30 *et seq.*) and a "county transit system" (R. C. 306.01 to 306.13). Upon comparison, it is apparent that each entity is empowered with significantly different authority, regulations and responsibilities. County transit system (CTS) employees, for example, are subject to a civil service organization and procedure. R. C. 306.04. This is not the case with RTA employees. Compare, R. C. 306.30 *et seq.* to R. C. 124.11(B) and 4117.01(B). CTS employees are expressly exempt from vacation, holiday and sick leave privileges. This is not the case with RTA employees.

We find the above comparisons noteworthy because CTS employees are by definition county employees and, barring exemption, covered by said benefits. The absence of a similar exemption for RTA employees is consistent with the definition of a RTA. It is neither the state nor the county in the political sense. See R. C. 306.31 and 306.01. By definition, a RTA is a "\*\*\*political subdivision of the state *and* a body corporate with all the powers of a corporation\*\*\*." (Emphasis added.) R. C. 306.31. It is a hybrid entity which purposely defies categorization. Cf. 1960 Ohio Atty. Gen. Opinions No. 1302, page 298. RTA is never mentioned by name or inference in any of the benefits to which plaintiff claims entitlement. See R. C. 121.161, 124.15, 124.19 and 124.38, and 1973 Ohio Atty. Gen. Opinions No. 73-017.

The above situation is analogous to a question that was presented to the Ohio Attorney General and reflected upon in 1965 Ohio Atty. Gen. Opinions No. 65-47. While we are, of course, not bound by such an opinion, we not only find the rationale in the opinion persuasive but also take judicial notice that the legislature relies on such opinions. See *McGarity* v. *Central Ohio Transit Authority* (Franklin Co. C.P. No. 78CV-08-3700, February 2, 1979), unreported.

The question presented in Opinion No. 65-47, *supra,* was whether employees of a regional airport authority (RAA) were subject to the provisions of R. C. Chapter 143 (now R. C. Chapter 124). A perusal of the RAA and RTA statutes shows that they were formed from the same mold. Although we refrain from setting out at length the discussion therein, we note that the Attorney General concluded that RAA employees were neither state nor county employees and were not privy to the benefits of R. C. Chapter 143 (now R. C. Chapter 124). The opinion expressly relies on the notion that when certain benefits are not specifically provided for in a statutory scheme, the absence indicates a legislative intent not to include such benefits. As stated in the opinion (Opinion No. 65-47, *supra*), at pages 2-88 to 2-89, "***[e]xpressio unius est exclusio alterius,* the mention of one thing implies the exclusion of another thing." This we believe is the situation at bar.

We also believe that the void created by the legislature in not providing for the previously mentioned benefits is explained by the presence of R. C. 306.34 and 306.35(X). R. C. 306.34 empowers a RTA board of trustees to manage and conduct corporation business. This includes, among other things, the formulation of procedures for its actions, the manner of selection of its employees, their compensation, number and qualifications, and "***any other lawful subject necessary to the operation of***[a] regional transit authority***." R. C. 306.34. R. C. 306.35(X) allows, *inter alia,* a RTA to assume previously existing labor contracts between employees and the management of the system and to enter into collective bargaining.

It is an incongruous situation to provide for collective bargaining, and yet, require compliance with statutory benefits in the area of wages, holidays, sick pay and vacations. Since these conditions of employment are not provided for by R. C. 306.30 *et seq.* (unlike PERS), it is only logical to conclude that such issues are to be determined by the parties themselves at the bargaining table. This is also consistent with, and proper in light of, the Supreme Court's holding in *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, and *Civil Service Personnel Assn.* v. *Akron* (1976), 48 Ohio St. 2d 25.

*IV.*

The procedural posture of the instant appeal arises from a Civ. R. 12(B)(6) dismissal. We conclude that plaintiff cannot prove any set of facts entitling him to the requested relief.

In summary, we hold that the employees of Metro, while "public employees" for the limited purpose of sharing the benefits of PERS, are not entitled by statute to the benefits of vacation leave, sick leave, state holidays or pay ranges.

Accordingly, the judgment of the Court of Common Pleas of Summit County is hereby affirmed.

*Judgment affirmed.*

VICTOR and HUNSICKER, JJ., concur.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6 (C), Article IV, Constitution.