FINOCCHI et al., Appellants,

v.

GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY, Appellee.

[Cite as *Finocchi v. Greater Cleveland Regional Transit Auth.* (1993), 85 Ohio App.3d 572.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61650.

Decided Feb. 16, 1993.

*Gaines & Stern Co., L.P.A., David Roloff* and *Paul P. Psota,* for appellants.

*Duvin, Cahn & Barnard, Lee J. Hutton* and *Jon M. Dileno,* for appellee.

KRUPANSKY, Judge.

This cause of action was commenced by filing a complaint in the common pleas court on March 31, 1989. The appeal *sub judice* stems from an order of the trial court dated March 18, 1991 granting summary judgment against plaintiffs-appellants, eight union transit employees, in favor of their employer, defendant-appellee Greater Cleveland Regional Transit Authority ("GCRTA").

GCRTA acquired substantially all the assets of the city of Shaker Heights Rapid Transit System and continued thereafter to operate the rail transit system with its existing union employees as a going concern. Plaintiffs remained members of the Brotherhood of Locomotive Engineers Division 923 (the "BLE") until they individually by signing a written document disaffiliated themselves from the BLE approximately one year following the transfer. GCRTA and the city of Shaker Heights accomplished the transfer by executing a "Mass Transit System Transfer Agreement" dated September 5, 1975 (the "Transfer Agreement") whereby GCRTA assumed certain obligations to the existing union transit employees consistent with federal and state law.

The Transfer Agreement Schedule G–3 "Protection of Rights of Employees" (the "Protection of Rights Schedule") enumerated eight specific benefits, terms and conditions of employment, including the following, *viz.:* certain meal allowances, sick leave benefits, anniversary day and floating Saturday, vacation benefits, cost of living escalators, seniority rights and Social Security coverage. However, the introduction to the Schedule G–3 "Protection of Rights of Employees" specifically stated as follows:

"This agreement shall apply irrespective of any representation by a collective bargaining agent and shall in no way restrict the rights of any collective bargaining agent."

The terms of the labor agreement between the BLE and city of Shaker Heights were due to expire on December 31, 1976. On September 3, 1976, prior to the scheduled expiration date, BLE and GCRTA executed a "Standardization Agreement" to make the wages, benefits and terms and conditions of employment uniform for all GCRTA union employees system-wide and to consolidate all employees into one master collective bargaining unit represented exclusively by the larger Amalgamated Transit Union Division 268, AFL–CIO (the "ATU"). Section 1 of the Standardization Agreement provided that effective September 5, 1976 the existing BLE bargaining unit was dissolved and the employees from the BLE were consolidated with the ATU bargaining unit and *the existing Rules of the city of Shaker Heights Department of Transportation providing different benefits "shall be null and void."* Section 4 of the Standardization Agreement recited that the terms had been approved and ratified by the BLE union

members and all eight plaintiffs executed and signed a written document indicating their approval and disaffiliating themselves from the BLE.

Section 2 of the Standardization Agreement comprehensively specified that effective September 5, 1976 plaintiffs' wages, benefits, terms and conditions of employment were governed exclusively by the existing collective bargaining agreement between the GCRTA and ATU with only six exceptions with which compliance has been made. Plaintiffs have remained members of the ATU since that date and the GCRTA and ATU have subsequently entered into a series of four three-year collective bargaining agreements governing plaintiffs' wages, benefits, terms and conditions of employment. There is no dispute that GCRTA has complied with all provisions, including the six exceptions as stated above in the Standardization Agreement and all four subsequent collective bargaining agreements related to the terms, conditions and benefits of employment.

Plaintiffs commenced this litigation by filing a "Verified Complaint with Request for Preliminary Injunction" in the trial court March 31, 1989 alleging that GCRTA breached the 1975 Transfer Agreement Protection of Rights Schedule and violated state law. Plaintiffs sought to enjoin defendant from consolidating its rail operations and combining seniority lists for all union employees pursuant to the 1988 collective bargaining agreement. Plaintiffs subsequently filed an amended complaint requesting compensatory damages for various other alleged breaches by GCRTA by failing to provide meal allowances, sick leave benefits, anniversary day and floating Saturday, vacation benefits, cost of living adjustments, Social Security benefits allegedly due them as third-party beneficiaries under the 1975 Transfer Agreement Protection of Rights Schedule.

Defendant GCRTA filed answers denying the substantive allegations of plaintiffs' complaint and amended complaint. The parties thereafter filed various factual stipulations, agreed exhibits and respective cross-motions for summary judgment on October 5, 1990. Each party subsequently filed a brief in opposition to its opponents' motion for summary judgment. The trial court denied plaintiffs' motion for summary judgment and granted summary judgment in favor of defendant in entries journalized March 18, 1991.

Plaintiffs' timely appeal raising five assignments of error which are not separately briefed or argued in compliance with App.R. 12(A)(2) and 16(A)(7). As a result, this court shall address all five assignments of error collectively. Plaintiffs' five assignments of error follow:

"I. The trial court erred in determining that the transfer agreement between the city of Shaker Heights and the RTA did not oblige the RTA to preserve and continue the rights, privileges and benefits afforded appellants when they worked for Shaker Heights.

"II. The trial court erred in determining that Ohio Revised Code, Section 306.35(X) does not require the RTA to preserve and continue the rights, privileges and benefits afforded appellants when they worked for Shaker Heights.

"III. The trial court erred in determining that the RTA preserved and continued the rights, privileges and benefits afforded appellants when they worked for Shaker Heights.

"IV. The trial court erred in determining that the standardization agreement between the BLE and RTA and subsequent collective bargaining agreements between the ATU and RTA lawfully discontinued rights, privileges and benefits afforded appellants while employed by Shaker Heights.

"V. The trial court erred in determining that the RTA lawfully modified its transfer agreement obligations after the appellants started working for the RTA."

Plaintiffs' five assignments of error lack merit.

Plaintiffs contend the trial court erroneously denied their motion for summary judgment and improperly granted summary judgment in favor of defendant GCRTA since the 1975 Transfer Agreement Protection of Rights Schedule and R.C. 306.35(X) perpetuate various substantive terms of their employment prior to being employed by GCRTA which must be continued in perpetuity without adverse modification.

However, plaintiffs have failed to produce any evidence defendant GCRTA breached any obligation to them related to the benefits, terms and conditions of their employment. The sole dispute between the parties relates to the change in benefits referred to in the Transfer Agreement following the execution of the Standardization Agreement and, as noted above, the parties agree GCRTA complied with all provisions of the Standardization Agreement and subsequent collective bargaining agreements. (Factual Stipulations at Paragraphs 8 and 9.) The stipulated facts and exhibits demonstrate there is no genuine issue of material fact and GCRTA is entitled to summary judgment pursuant to Civ.R. 56 as a matter of law.

■ As noted above, GCRTA acquired the former Shaker Rapid Transit System with grants from the United States Department of Transportation under the Urban Mass Transportation Act of 1964 ("UMTA"), Section 1601 *et seq.*, Title 49, U.S.Code. Plaintiffs argue the United States Supreme Court has recognized in this context that Congress enacted UMTA Section 13(c) [1] based upon a concern

---

1. UMTA Section 13(c), codified as Section 1609(c), Title 49, U.S.Code, provides as follows:
    "It shall be a condition of any assistance under section 1602 of this title that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the

for the collective bargaining rights of transit employees following the acquisition of transit operations with federal funds since many states did not recognize such rights in the context of public employers exempt from federal collective bargaining law. *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL–CIO–CLC* (1982), 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639. However, this statute does not imply a federal cause of action and agreements made pursuant to this provision are governed by state contract law principles. *Id.; Santini v. RTA* (Dec. 31, 1986), Cuyahoga App. No. 51509, unreported, at 7, 1986 WL 552.

■ Federal courts construing UMTA Section 13(c) recognize that it does not perpetuate the substantive terms of collective bargaining agreements existing prior to an acquisition by a public employer, but merely protects the collective bargaining process. *Amalgamated Transit Union Internatl., AFL–CIO v. Donovan* (C.A.D.C.1985), 767 F.2d 939; *Local Div. 589 v. Commw. of Mass.* (C.A.1, 1981), 666 F.2d 618, 634–635. In other words, UMTA Section 13(c) merely preserves existing rights and maintains the *status quo* following an acquisition before a subsequent collective bargaining agreement is adopted and does not create any new rights or enhance any prior rights under pretransfer labor agreements. See *Div. 580, Amalgamated Transit Union AFL–CIO v. Cent. New York Regional Transp. Auth.* (C.A.2, 1977), 556 F.2d 659.

■ The authority of public employers to enter into collective bargaining agreements prior to the enactment of the Ohio Public Employees Collective Bargaining Act was limited and depended upon whether the terms of the labor agreement conflicted with or abrogated public authority. *Struthers City School Bd. of Edn. v. Struthers Edn. Assn.* (1983), 6 Ohio St.3d 308, 6 OBR 368, 453 N.E.2d 613; *Dayton Teachers Assn. v. Dayton Bd. of Edn.* (1978), 41 Ohio St.2d 127, 70 O.O.2d 223, 323 N.E.2d 714; *Spitaleri v. Metro RTA* (1980), 67 Ohio App.2d 57, 21 O.O.3d 367, 426 N.E.2d 183. However, R.C. 4113.30 expressly

---

interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2)(f) of this title. The contract for the granting of any assistance shall specify the terms and conditions of the protective arrangements."

invalidated clauses binding a successor to existing collective bargaining agreements when a public employer acquired and operated an existing organization.[2]

■ The Ohio regional transit authority enabling statutes facilitate the acquisition of federal funding in this context by overriding this provision and mandating the assumption of pretransfer transit employee collective bargaining rights. R.C. 306.35(X), cited by plaintiffs, is analogous to UMTA Section 13(c) and provides as follows:

" * * * the regional transit authority:

" * * *

"Shall, if it acquires any existing transit system, assume all the employer's obligations under any *existing* labor contract between the employees and management of the system. The board shall, if it acquires, constructs, controls, or operates any such facilities, negotiate arrangements to protect the interests of employees affected by such acquisition, construction, control, or operation. Such arrangements shall include, but are not limited to:

"(1) The preservation of rights, privileges, and benefits under existing collective bargaining agreements or otherwise, the preservation of rights and benefits under any existing pension plans covering prior service, and continued participation in social security in addition to participation in the public employees retirement system as required in Chapter 145. of the Revised Code;

"(2) The continuation of collective bargaining rights;

"(3) The protection of individual employees against a worsening of their employment;

"(4) Assurances of employment to employees of such transit systems and priority reemployment of employees terminated or laid off;

"(5) Paid training or retraining programs;

"(6) Signed written labor agreements.

"Such arrangements may include provisions for the submission of labor disputes to final and binding arbitration." (Emphasis added.)

Based upon the stipulated facts, plaintiffs' claims *sub judice* are limited to the preservation of existing benefits under subsection (1) and against worsening their employment under subsection (3) of R.C. 306.35(X).

■ The only reported case construing R.C. 306.35(X) recognizes the "incongruity" between mandating specific terms and authorizing participation in the

---

2. See Appendix.

collective bargaining process. *Spitaleri v. Metro RTA, supra,* 67 Ohio App.2d at 63, 21 O.O.3d at 370, 426 N.E.2d at 186. The *Spitaleri* court recognized this provision authorized regional transit authorities such as GCRTA to assume existing labor contracts between the employees and management of the acquired transit system and to enter into collective bargaining. Plaintiffs have offered no reason to construe R.C. 306.35(X) differently from the analogous provision of UMTA Section 13(c) to perpetuate the substantive terms of pre-acquisition labor agreements in the case *sub judice.* Like UMTA Section 13(c), the terms of R.C. 306.35(X) are designed merely to maintain the *status quo* by preserving existing rights of public employees upon acquisition of a transit system and not to create any new rights or enhance prior rights under pre-acquisition labor agreements. As recognized by the *Spitaleri* court, R.C. 306.35(X) recognizes the parties' freedom of contract at the bargaining table and does not fix wages, benefits or terms of employment in perpetuity, but merely prohibits regional transit authorities from unilaterally modifying the terms of employment of their newly acquired employees.

Plaintiffs' arguments concerning the Ohio Public Employees Collective Bargaining Act effective 1984 are likewise unpersuasive since the Act was not effective when the relevant events transpired in the case *sub judice.* Although the collective bargaining agreements between GCRTA and ATU covering plaintiffs mandated compliance with Ohio law, plaintiffs have failed to demonstrate defendant violated any such law.

■ Finally, plaintiffs contend the 1975 Transfer Agreement Protection of Rights Schedule creates a contractual obligation by GCRTA to provide benefits to them as third-party beneficiaries since there is no provision expressly limiting the duration of defendant's obligation to "continue" the specified benefits. However, this contention is belied by the following provision of Protection of Rights Schedule which permits future modification:

"This Agreement shall apply irrespective of any representation by a collective bargaining agent and shall in no way restrict the rights of any collective bargaining agent."

This provision acknowledges the Transfer Agreement applies regardless of who represented the former Shaker Transit employees, whether it be the BLE, ATU or some other collective bargaining agent, or if any bargaining agent represented the employees, and that the Transfer Agreement did not restrict the rights of such bargaining agent.

Pursuant to this provision, the BLE executed the Standardization Agreement which immediately increased plaintiffs' wages from $6.28 per hour to $7.00 per hour and produced other comparable benefits. Consequently, although the

Transfer Agreement contained no expressly stated duration, the Transfer Agreement did not remain in effect in perpetuity but merely until the occurrence of a particular event, *viz.*, a subsequent agreement by plaintiffs' collective bargaining agents as in the case *sub judice.*

The Standardization Agreement clearly replaced and superseded plaintiffs pre-transfer collective bargaining rights since it did not refer to the Transfer Agreement rights and declared the former Shaker Heights rules providing different benefits "null and void." Plaintiffs agree this conclusion is consistent with the results reached in other Ohio cases involving the merger of operations in the analogous private employer context. *E.g., Neal v. Reliance Elec. & Eng. Co.* (1967), 12 Ohio App.2d 183, 41 O.O.2d 284, 231 N.E.2d 882; *Britt v. Trailmobile Co.* (C.A.6, 1950), 179 F.2d 569; *Patton v. Globe Wernicke Co.* (1966), 21 Ohio Misc. 125, 249 N.E.2d 95; *Hess v. Trailer Co. of Am.* (C.P. 1944), 31 O.O. 566.

Even if this court adopted plaintiffs' construction of the Transfer Agreement, the trial court could properly find the subsequent Standardization Agreement validly modified any remaining obligations of the GCRTA under the Transfer Agreement. There is no dispute the Standardization Agreement was adopted on plaintiffs' behalf by the BLE and was expressly ratified by all eight plaintiffs by executing a written document indicating their approval. Moreover, plaintiffs continued acceptance of benefits pursuant to the Standardization Agreement for the past fourteen years demonstrates implied ratification of the Standardization Agreement as a matter of law.

This court has recognized in this context as follows:

"Ratification may be implied where there is actual knowledge of an agreement, acceptance of its benefits and a failure to repudiate the unauthorized contract within a reasonable period of time." *Cleveland v. Assn. of Fire Fighters, Local 93 Internatl. Assn. of Fire Fighters* (1991), 73 Ohio App.3d 220, 228, 596 N.E.2d 1086, 1091 (citing *Campbell v. Hospitality Motor Inns* [1986], 24 Ohio St.3d 54, 24 OBR 135, 493 N.E.2d 239; *United States Rolling Stock Co. v. Atlantic & Great W. RR. Co.* [1878], 34 Ohio St. 450; *Helle v. Landmark* [1984], 15 Ohio App.3d 1, 15 OBR 22, 472 N.E.2d 765). Under the circumstances plaintiffs are estopped from arguing to the contrary.

Accordingly, plaintiffs' five assignments of error are overruled.

*Judgment affirmed.*

JOHN F. CORRIGAN, P.J., and SPELLACY, J., concur.

## APPENDIX

§ 4113.30  Enforceability of successor clause in collective bargaining agreement; disclosure.

(A) As used in this section:

(1) "Successor employer" means any purchaser, assignee, or transferee of a business that is party to a collective bargaining agreement, if the purchaser, assignee, or transferee conducts or will conduct substantially the same business operation or offer the same service, and uses the same physical facilities as the contracting employer.

(2) "Public employer" means the state or any political subdivision of the state, including, without limitation, any municipal corporation, county, township, school district, state institution of higher learning, any public or special district, or any state agency, authority, commission, board, or other public employer.

(B) Where a collective bargaining agreement between an employer and a labor organization contains a successor clause, such clause is binding upon and enforceable against any successor employer who succeeds to the contracting employer's business until the expiration date stated in the agreement, except that no successor clause is binding upon or enforceable against any successor employer for more than three years from the effective date of the collective bargaining agreement between the contracting employer and the labor organization.

(C) An employer who is a party to a collective bargaining agreement containing a successor clause shall disclose the existence of the agreement and clause to any successor employer. The disclosure requirement is satisfied by including in any contract of sale, agreement to purchase, or any similar instrument of conveyance, a statement that the successor employer is bound by such successor clause as provided for in the collective bargaining agreement.

(D) This section does not apply:

(1) To any public employer;

(2) To any employer who is subject to the "National Labor Relations act of 1935," 49 Stat. 449, 29 U.S.C. 151, as amended, or "the Railway Labor Act of 1926," 44 Stat. 577, 45 U.S.C. 151 as amended.