[Cite as *Amalgamated Transit Union Local 268 v. Greater Cleveland Regional Transit Auth.*, 2020-Ohio-3120.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AMALGAMATED TRANSIT UNION
LOCAL 268,                                              :

      Plaintiff-Appellant,              :

                                                       No. 108883

      v.                                           :

GREATER CLEVELAND REGIONAL
TRANSIT AUTHORITY,                              :

      Defendant-Appellee.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 28, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912586

---

### *Appearances:*

Brian J. Smith, *for appellant.*

Littler Mendelson P.C., Stephen J. Sferra, and Jeffrey Seidle, *for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1} Plaintiff-appellant, Amalgamated Transit Union, Local 268 ("Local 268" or "the Union"), appeals from the trial court's August 2019 judgment granting the Civ.R. 12(B)(1) motion to dismiss for lack of subject matter filed by defendant-

appellee, the Greater Cleveland Regional Transit Authority ("GCRTA"). For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 2} In March 2019, the Union filed this action, requesting the common pleas court to compel GCRTA to proceed to "interest arbitration" to resolve a labor dispute over a successor agreement to the parties' 2014 collective bargaining agreement ("CBA"). The 2014 CBA expired in July 2017, and at the time Local 268 filed this action, the parties had not reached an agreement on a successor CBA.

{¶ 3} The record shows that pursuant to section 13(c) of the Urban Mass Transportation Act of 1964, transit entities entered into certain protective agreements to protect the employees affected by the funds. The "section 13(c) agreements" were a condition precedent to transit entities receiving federal funds. In 1975, GCRTA's predecessor, the Cleveland Transit System, and the Union entered into such an agreement. Around the same time, Cleveland Transit System also entered into such an agreement with national entities, that is, the American Public Transit Association and the national Amalgamated Transit Union. Paragraph 9 of the section 13(c) Agreement at issue here provides as follows:

> In the event of any labor dispute not otherwise governed by law or labor agreement involving the Public Body and the employees covered by agreement which cannot be settled within thirty (30) days after such dispute first arises, such dispute may be submitted at the written request of either the Union or the Public Body to a board of arbitration selected in accordance with the existing collective bargaining agreement, if any, or if none, as hereinafter provided.

**{¶ 4}** In 1984, Ohio's "Public Employees Collective Bargaining Act," which is codified in R.C. Chapter 4117, became effective. As a result of the enactment of R.C. Chapter 4117, the State Employment Relations Board ("SERB") was created. The Act sets forth dispute settlement procedures. One of the provisions, set forth in R.C. 4117.14(C), provides in relevant part, that:

> [i]n the event the parties are unable to reach an agreement, they may submit, at any time prior to 45 days before the expiration date of the collective bargaining agreement, the issues in dispute to any mutually agreed upon dispute settlement procedure which supersedes the procedures contained in this section. The procedures may include any other dispute settlement procedure mutually agreed to by the parties.

**{¶ 5}** A mutually agreed upon dispute settlement procedure is commonly referred to as a "MAD," and as set forth above, usurps the procedures contained in R.C. Chapter 4117 and the jurisdiction of SERB.

**{¶ 6}** As mentioned, the parties' most recent CBA expired in July 2017, and at the time Local 268 filed this action, they had not reached an agreement as to the terms of their new CBA. On April 21, 2017, GCRTA sent a "notice to negotiate" to SERB, and served it on the Union. The notice stated that the parties had not adopted a MAD because R.C. Chapter 4117.14, which governs the "procedure for termination or modification of agreement or negotiation of successor agreement," supplanted paragraph 9 of the section 13(c) Agreement under state law governing labor disputes and as contemplated under the section 13(c) Agreement.

{¶ 7} On April 25, 2017, Local 268 filed a "notice to negotiate" with SERB, and served a copy on GCRTA. The union's notice claimed that the parties had adopted a MAD, which superseded the statutory procedures set forth in R.C. 4117.14.

{¶ 8} SERB sent the parties a letter in June 2017, appointing a mediator under R.C. 4117.14 to assist the parties in bargaining. According to the letter, either party "may request a fact-finding panel any time after a mediator is appointed, and requires [SERB] to appoint a panel within 15 days after receiving such a request."

{¶ 9} In February 2019, Local 268 sent GCRTA a letter stating it was submitting the labor dispute to interest arbitration. GCRTA filed a response in March 2019, in which it maintained its position that R.C. 4117.14 controlled the parties' dispute. In its response, GCRTA stated that it would "not agree to submit the labor dispute over the terms of a successor contract to interest arbitration or any type of arbitration under the terms of the 13(c) Agreement."

{¶ 10} The Union responded on March 4, 2019, requesting that the parties submit the issue of whether there was a right to interest arbitration to the arbitration procedures set forth in the section 13(c) Agreement. On March 15, 2019, the Union filed this action in the common pleas court under R.C. 2711.03 and 2711.16 to compel arbitration under the section 13(c) Agreement's arbitration provision. The Union also sought a declaration that the section 13(c) Agreement is a MAD agreement that trumps the procedures of R.C. 4117.14.

{¶ 11} In May 2019, GCRTA filed a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction. The trial court granted the motion in July 2019, and this appeal ensues. The Union's assignment of error reads as follows:

I.  The Cuyahoga County Court of Common Pleas erred in its Judgment Entry dated July 17, 2019 dismissing the Application/Petition to Compel Enforcement of an Arbitration Agreement filed by Plaintiff/Appellant Amalgamated Transit Union Local 268 * * *. The Trial Court erred as a matter of law in concluding that the action should be dismissed for lack of subject matter jurisdiction.

**Law and Analysis**

**Standard of Review**

{¶ 12} We review a trial court's decision on a Civ.R. 12(B)(1) motion to dismiss under a de novo standard of review. *Bank of Am. v. Macho*, 8th Dist. Cuyahoga No. 96124, 2011-Ohio-5495, ¶ 7, citing *Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 936, 746 N.E.2d 222 (10th Dist.2000). In order to dismiss a complaint under Civ.R. 12(B)(1), the court must determine whether a plaintiff has alleged any cause of action that the court has authority to decide. *Crestmont* at *id.* When determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, the trial court is not confined to the allegations of the complaint and may consider material pertinent to such inquiry. *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 358 N.E.2d 526 (1976), paragraph one of the syllabus.

**Trial Court's Judgment**

{¶ 13} In its judgment entry granting RTA's motion to dismiss, the trial court found that the Union's claims "arise from or depend on the collective bargaining rights created by R.C. Chapter 4117 and fall within the exclusive jurisdiction of [SERB]." In support of its decision, the trial court relied on two cases: (1) *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88, and (2) *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-ohio-478, 56 N.E.3d 913.

**Issue Presented for Review**

{¶ 14} In this appeal, we decide: (1) whether Local 268's claims arise from the collective bargaining rights created under R.C. Chapter 4117 and fall within the exclusive jurisdiction of SERB, as contended by RTA; (2) or whether common pleas courts have jurisdiction because the exceptions set forth under R.C. 4117.10 and 306.12 take section 13(c) agreements out of the exclusive jurisdiction of SERB under R.C. Chapter 4117, as the Union contends.

**Case Law**

*State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88.

{¶ 15} In *Sutula*, a union certified by SERB as the exclusive representative of a bargaining unit consisting of a group of employees from the city of Cleveland filed a complaint for injunctive and declaratory relief regarding the city of Cleveland's duty to perform in accordance with its prestrike settlement offer,

following two years of failed negotiations pursuant to R.C. 4117.14. Cleveland, in response, filed a complaint for a writ of prohibition in this court. *State ex rel. Cleveland v. Sutula*, 8th Dist. Cuyahoga No. 94264, 2010-Ohio-914. This court dismissed the prohibition action, and the city appealed to the Ohio Supreme Court.

{¶ 16} The Ohio Supreme Court considered whether the trial court patently and unambiguously lacked jurisdiction over the union's action for injunctive and declaratory relief. *Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88, at ¶ 13-14. The court, relying on its previous position in *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991), reiterated that SERB "'has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117'" and that the dispositive test for determining whether SERB has exclusive, original jurisdiction "is whether the claims 'arise from or depend on the collective bargaining rights created by R.C. Chapter 4117.'" *Sutula* at ¶ 16, 20, quoting *Franklin Cty. Law Enforcement Assn.* at paragraphs one and two of the syllabus.

{¶ 17} The *Sutula* court concluded that the trial court lacked jurisdiction because the union claimed that the city failed to abide by an agreement reached through collective-bargaining negotiations under R.C. Chapter 4117. *Id.* at ¶ 17, ¶ 25.

*State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913

{¶ 18} In *Ohio Civ. Serv. Emps. Assn.*, the Ohio Supreme Court considered whether individuals employed at a correctional facility in Ohio that was subject to the prison-privatization provisions in H.B. 153 were "public employees" under R.C. 4117.01(C) because of the collective-bargaining rights created by R.C. Chapter 4117. The court found that the collective-bargaining rights under R.C. Chapter 4117 applied:

> The determination whether employees working at [the facility] are public employees, as defined in R.C. 4117.01(C), and are therefore entitled to the benefits and protections afforded to bargaining-unit members under the [collective bargaining agreement], depends "entirely on the provisions of R.C. Chapter 4117, over which SERB has exclusive original jurisdiction."

*Id.* at ¶ 62, quoting *Ohio Historical Soc. v. State Emps. Relations Bd.*, 66 Ohio St.3d 466, 469, 613 N.E.2d 591 (1993). The *Ohio Civ. Serv. Emps. Assn.* court cautioned, however, that its opinion was not meant to "suggest that SERB has exclusive, original jurisdiction over every claim touching upon R.C. Chapter 4117." *Id.* at ¶ 63. The court explained that its decision did not "undertake to define the circumstances in which a common pleas court might have jurisdiction over claims touching upon R.C. Chapter 4117." *Id.* The court reiterated its position from *Franklin Cty. Law Enforcement Assn.* at paragraph two of the syllabus: "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive."

*Amalgamated Transit Union v. Toledo Area Regional Transit Auth.*, 6th Dist. Lucas No. L-12-1260, 2013-Ohio-4412.[1]

{¶ 19} The Union cites *Amalgamated Transit Union* in support of its position that the common pleas court has jurisdiction in this case. In *Amalgamated Transit Union*, the union filed an application to compel enforcement of arbitration. In response to the union's petition, Toledo Area Regional Transit Authority ("TARTA") filed a motion to dismiss for lack of subject-matter jurisdiction. The trial court summarily granted TARTA's motion and dismissed the action in its entirety for lack of subject-matter jurisdiction. The union appealed the dismissal.

{¶ 20} The facts of *Amalgamated Transit Union* are like the facts of this case. In 1975, TARTA and the union became parties to an agreement executed by the American Public Transit Association, the Amalgamated Transit Union, AFL-CIO, and the Transport Workers Union of America, AFL-CIO. Also in 1975, TARTA and the union executed a section 13(c) agreement, under which TARTA was required to make arrangements to preserve certain employee and collective bargaining rights as a condition precedent to receiving its federal funding. Paragraph 9 of the section 13(c) agreement provided in relevant part as follows:

> In the event of any labor dispute involving the Authority and the employees covered by this Agreement which cannot be settled within thirty (30) days after such dispute first arises, such dispute may be submitted at the written request of either the Union or the Authority to a board of arbitration selected in accordance with the existing collective bargaining agreement, if any, or if none, as hereinafter provided. * * *

---

[1] *Appeal not accepted, Amalgamated Transit Union, AFL-CIO, Local 697 v. Toledo Area Regional Transit Auth.*, 138 Ohio St.3d 1417, 2014-Ohio-566, 3 N.E.3d 1218.

*Id.* at ¶ 5.

{¶ 21} Thereafter, the Union and TARTA entered into a CBA. The CBA established the terms and conditions of employment for all of TARTA's paratransit service drivers. The CBA was effective October 1, 2009, through November 30, 2010, and was extended twice while the parties attempted to negotiate a new labor agreement. The parties were not able to come to an agreement on the terms, however, and the CBA expired on May 31, 2011.

{¶ 22} In June 2011, the union sent a letter notifying TARTA that it was submitting the dispute over the terms and conditions of a new labor agreement to binding arbitration pursuant to paragraph 9 of the section 13(c) agreement. TARTA did not appoint a member to the board of arbitration or comply with any of the requirements of the agreement relative to the union's demand for interest arbitration; TARTA later confirmed to the union that it was refusing to participate in interest arbitration as demanded by the union.

{¶ 23} Thereafter, the union filed a complaint in the common pleas court requesting an order directing the parties to promptly proceed to binding interest arbitration in accordance with paragraph 9 of the section 13(c) agreement. TARTA filed a motion to dismiss for lack of subject-matter jurisdiction, contending that the union's claim fell within the exclusive jurisdiction of SERB. TARTA maintained that the parties' section 13(c) agreement was inapplicable to their negotiations for a successor CBA and that the dispute should instead be resolved pursuant to the

procedures set forth under R.C. Chapter 4117 and under the exclusive jurisdiction of SERB.

{¶ 24} The trial court found that SERB had exclusive jurisdiction, dismissed the union's complaint, and the union appealed. The Sixth Appellate District reversed, finding that the common pleas court had jurisdiction. *See id.* at ¶ 25. The Sixth District recognized that the section 13(c) agreement was not intended to replace state labor law, but it also found SERB's jurisdiction to enforce the Public Employees Collective Bargaining Act did not authorize TARTA to disregard the promises it made in the section 13(c) agreement as a condition of receiving federal funds. *Id.*

*Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL-CIO-CLC*, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982)

{¶ 25} In *Jackson Transit Auth.*, the United States Supreme Court addressed section 13(c) agreements. Although the issue in the case was whether Congress intended to create federal causes of action for breaches of section 13(c) agreements and collective bargaining contracts, the case is nonetheless instructive.

{¶ 26} The Supreme Court discussed the reason for the existence of section 13(c) agreements: that is, to protect the conditions of private transit workers whose companies were being taken over by the public sector. As mentioned, the agreements were the condition precedent to the transit entities receiving federal funds. The goal was to prevent any worsening conditions for transit workers whose transit entities were transitioning from the private sector to the public sector.

**{¶ 27}** *Jackson Transit Auth.* makes clear that section 13(c) agreements were not intended to usurp state labor law, stating the following:

> Section 13(c) would not supersede state law, it would leave intact the exclusion of local government employers from the National Labor Relations Act, and state courts would retain jurisdiction to determine the application of state policy to local government transit labor relations. Congress intended that § 13(c) would be an important tool to protect the collective-bargaining rights of transit workers, by ensuring that state law preserved their rights before federal aid could be used to convert private companies into public entities.

*Id.* at 27-28.

**Analysis**

**{¶ 28}** After de novo review, and careful consideration of the case law, we find that the trial court did not err in dismissing Local 268's complaint. We recognize the Sixth Appellate District's decision in *Amalgamated Transit Union*, 6th Dist. Lucas No. L-12-1260, 2013-Ohio-4412, but decline to follow it.

**{¶ 29}** We turn to the language of the section 13(c) Agreement in this case that provides arbitration is appropriate "[i]n the event of any labor dispute *not otherwise governed by law* or labor agreement * * *." (Emphasis added.) Here, there is governing statutory state law, R.C. Chapter 4117. We are not persuaded by the Union's contention that the section 13(c) Agreement constitutes a MAD subject to arbitration. Specifically, at the time the section 13(c) Agreement was entered into in 1975, the Union and RTA could not have known that they were agreeing to a MAD under R.C. 4117.14(C) because R.C. Chapter 4117 had not yet been created.

{¶ 30} We are also not persuaded by the Union's contention that the section 13(c) Agreement controls because RTA has repeatedly received federal funds. As mentioned, the purpose of section 13(c) agreements is to ensure fairness and equity. They are reviewed by the Department of Labor for renewal certifications; in this case, the parties received renewal certifications on June 8 and July 11, 2018. These renewals would presumably not have occurred if there were violations of the Agreement.

{¶ 31} Local 268 contends that R.C. 4117.10 and 306.12 provide exceptions to the general exclusive jurisdiction in these cases of SERB. R.C. 4117.10 governs agreements between a public employer and an exclusive representative entered into under chapter R.C. 4117, and provides in relevant part that,

> [e]xcept for sections 306.08, 306.12, 306.35, and 4981.22 of the Revised Code and arrangements entered into thereunder, and section 4981.21 of the Revised Code as necessary to comply with section 13(c) of the "Urban Mass Transportation Act of 1964," * * * and arrangements entered into thereunder, this chapter prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in this chapter or as otherwise specified by the general assembly.

R.C. 4117.10(A)(4).

{¶ 32} R.C. 306.12 governs "employee rights after acquisition of existing system," and provides, in part, that,

> Any board of county commissioners operating a transit system or any county transit board shall, if it acquires any existing transit system, assume all the employer's obligations under any existing labor contract between the employees and management of the system. The board shall, if it acquires, constructs, controls, or operates any such facilities,

negotiate arrangements to protect the interests of employees affected by such acquisition, construction, control, or operation.

{¶ 33} The statute provides a nonexclusive list of such arrangements, and provides that "[s]uch arrangements may include provisions for the submission of labor disputes to final and binding arbitration." *Id.*

{¶ 34} We are not persuaded by Local 268's contention that these statutory provisions take this case out of the control of R.C. Chapter 4117. R.C. 4117.10(A)(4) provides that it applies "*as necessary* to comply with section 13(c) of the 'Urban Mass Transportation Act of 1964 * * *.'" (Emphasis added.) The statute further provides that R.C. Chapter 4117 "prevails over any and all other conflicting laws, resolutions, provisions, present or future * * *." *Id.* Further, R.C. 306.12 provides that the arrangements discussed under that statute "*may* include provisions for the submission of labor disputes to final and binding arbitration." (Emphasis added.)

{¶ 35} Thus, R.C. 4117.10 and 306.12 do not provide that compliance with the arbitration provisions under section 13(c) agreements is mandatory. And when we read the statutes in conjunction with the section 13(c) Agreement at issue here, which provides that it applies if the labor dispute is "not otherwise governed by law," we agree with GCRTA that R.C. Chapter 4117 is the governing law. We believe the dissent in *Toledo Area Regional Transit Auth.*, 6th Dist. Lucas No. L-12-1260, 2013-Ohio-4412, properly framed the issue, stating the following:

> Section 13(c) agreements were designed "merely to maintain the status quo by preserving existing rights of public employees upon acquisition of a transit system and not to create any new rights or enhance prior rights under pre-acquisition labor agreements." *Finocchi v. Greater*

*Cleveland Regional Transit Auth.*, 85 Ohio App.3d 572, 580, 620 N.E.2d 872 (8th Dist.1993). * * * In other words, they did not create collective bargaining rights that did not already exist. *United Transp. Union, AFL-CIO v. Brock*, 815 F.2d 1562, 1565, 259 U.S. App. D.C. 361 (D.C.Cir.1987). But the Ohio legislature has since enacted Chapter 4117 (effective Apr. 1, 1984), which requires public employers to collectively bargain with its employees, and created [SERB]. SERB has exclusive jurisdiction over claims arising from or depending on the collective bargaining rights created by Chapter 4117. R.C. 4117.02; *State ex rel. Williams v. Belpre City School Dist. Bd. of Educ.*, 41 Ohio App.3d 1, 6, 534 N.E.2d 96 (4th Dist.1987); *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88, ¶ 20. Thus, after TARTA and the unions entered into the 13(c) protective agreement, Ohio adopted a statutory scheme providing protections that went above and beyond what the federal government sought to guarantee in enacting section 13(c). Moreover, Ohio essentially codified 13(c) assurances in Chapter 306 of the Revised Code, which further protects transit system employees should the legislature eliminate public employees collective bargaining rights * * *.

*Id.* at ¶ 31-32 (Jensen, J., dissenting).

{¶ 36} So while 13(c) protective agreements may have played an important role in assuring private transit company employees that they would not lose bargained-for rights upon being publicly acquired, the Ohio legislature now offers those employees two additional layers of protection. *See Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Commonwealth of Massachusetts*, 666 F.2d 618, 634 (1st Cir.1981) (recognizing that state law may modify section 13(c) assurances without bringing about an unfair or inequitable result.)

{¶ 37} Based on the reasons discussed in this opinion, we agree with the dissent in *Toledo Area Regional Transit Auth.*, and thus find that the trial court

properly dismissed this case for lack of subject-matter jurisdiction.  Local 268's sole

assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment

into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
EILEEN A. GALLAGHER, J., CONCUR