## ROUDA v. THE LOWRY & GOEBEL CO.

*Master and servant — Scope of employment — Liability to third person — Assault by employe collecting account — Pleading.*

1. An employer is liable for injuries resulting from an assault made by his employe upon a third person where such assault was made by the employe in the course of his employment for the furtherance of the employer's business, or pursuant to either express or implied authority given such employe by the employer.

2. A petition which alleges that one, a collector of the defendant, who was in the employ of the defendant in the collection of accounts from customers of defendant, while carrying out the course of his employment in the collection of claims, called at the home of plaintiff and because plaintiff refused to pay him the amount of money due defendant did then and there wrongfully, illegally and with great force assault plaintiff, and that said assault took place in the home of plaintiff while said employe was working in his capacity as a collector for said defendant, states a cause of action.

(Decided March 26, 1917.)

ERROR: Court of Appeals for Hamilton county.

*Mr. John C. Rogers,* for plaintiff in error.
*Mr. Horace A. Reeve,* for defendant in error.

GORMAN, J. The plaintiff, Joseph W. Rouda, commenced an action in the superior court of Cincinnati against the defendant, claiming damages for personal injuries which resulted to him through two assaults made upon him on different occasions by an employe and servant of the defendant company.

In his first cause of action the plaintiff sets out:

"That on or about the 15th day of October 1915, one of the collectors of the said defendant com-

pany, who was in the employ of the defendant in the collection of accounts from various customers of the said defendant company, while carrying out the course of his employment in the collection of claims, called at the home of this plaintiff, and because said plaintiff refused to pay said collector the amount of money due said defendant company said employe did then and there wrongfully, illegally and with great force assault this plaintiff by striking him with his hands and fists upon the face, chest and other parts of the body; said assault took place in the home of said plaintiff while said employe was working in his capacity as a collector for said defendant company."

In his second cause of action plaintiff sets out:

"That on or about the 29th day of March, 1916, said employe, in company with another employe called upon this plaintiff for the purpose of collecting the balance of the claim due said defendant company, and without giving plaintiff opportunity to pay said claim and without any good reason therefor, wrongfully, illegally and with great force assaulted plaintiff by striking him with his hands and fists upon the right side of his face and jaw and other parts of his body. This assault took place in the office of the place of business of said plaintiff, while plaintiff was engaged in his usual occupation and while said collector was working in his capacity as a collector for said defendant company."

Plaintiff then sets out his injuries, and asks for $2,500 as damages.

To this petition the defendant interposed a general demurrer on the ground that the petition does

not state a cause of action against the said defendant. The demurrer does not go specifically to the first and second causes of action, but to the petition as an entirety.

The superior court sustained this demurrer, ordering the defendant to go hence without day. It further ordered that the petition of the plaintiff be dismissed at his costs. Plaintiff duly excepted to this judgment. The entry does not set out that the plaintiff did not desire to plead further, but presumably that was the situation.

Plaintiff prosecutes error to this court and asks for a reversal of the judgment of the superior court.

As to the second cause of action, we are of the opinion that the plaintiff failed to set out facts sufficient to constitute a cause of action. There is an absence of an averment in the second cause of action that the assault made by the employe of the defendant was done in the course of the employment or while carrying out the course of defendant's business. From all that appears in this cause of action the assault made by the employe of defendant was not in the furtherance of defendant's business, and not for the purpose of enforcing the collection of a claim. A reference to the averment above quoted shows that the employe called to collect the balance of a claim, and assaulted the plaintiff with great force and violence; *non constat* the assault made would imply some personal animosity or ill-will of the defendant. In order to make a good cause of action it was necessary to aver that the assault made by the employe of the defendant was in the course of his employment for

the furtherance of the employer's business, or pursuant to either express or implied authority given to him by the defendant company.

As to the first cause of action, we are of the opinion that the averments of the petition relative to it are sufficient to require an answer from the defendant company. The averment in this cause of action set out in the petition is that the assault made by the employe of the defendant was done "while carrying out the course of his employment in the collection of claims," etc. In other words, that the employe while carrying out the course of his employment illegally, wrongfully and with great force and violence assaulted the plaintiff.

It was held in the case of *The Nelson Business College Co.* v. *Lloyd,* 60 Ohio St., 448, in the first paragraph of the syllabus:

"An employer is liable for the willful or malicious acts of his servant done in the course of the servant's employment."

The averment of the petition in that case, as shown by report thereon on page 452, was:

"That the janitor being then and there engaged in the performance of his duties as such, 'assaulted the plaintiff and violently, wrongfully, recklessly and carelessly caused a ladder on which he was lawfully engaged at work in the school room of the defendant, to be overturned' whereby he was violently thrown to the floor and seriously injured."

The language employed by the plaintiff in the instant case is not perhaps the best that could be employed to convey the idea that the assault made by the employe of the defendant was done in pursuance of his employment, or in the course of his

employment, or while engaged in the performance of his duties, and as a part of his duties; but we think that it would not be just and fair to indulge in hairsplitting as to the language employed, and that the language used in the first cause of action set out in the petition, giving to it its ordinary, plain meaning, is that the assault was made upon the plaintiff by the employe of the defendant while that employe was engaged in the performance of his duties in the scope of his employment, and in the course of his employment, and in furtherance of the business of the master, the defendant.

In the *Nelson Business College case* there was no demurrer filed to the averments of the petition, but upon the evidence adduced by the plaintiff showing substantially the facts set out in the petition the court held that it was a proper case to go to the jury for determination whether or not the employer could be held liable.

The trial court seems to have decided the instant case on the demurrer, upon the authority of *The Little Miami Railroad Co.* v. *Wetmore,* 19 Ohio St., 110. But we think the court in the *Nelson Business College case, supra,* on page 454, distinguished the *Wetmore case* from the case which the court had there under consideration. Upon that page the court says:

"There was some evidence that the janitor had an ill-will against the plaintiff, and availed himself of this opportunity to injure him. If this were so, and the act was done with no other purpose, it was a clear departure from his employment, and the master is not liable. *Railroad* v. *Wetmore,* 19 Ohio St., 110. Whether the act was done with

this purpose or not was certainly a matter for the jury to determine upon a consideration of all the evidence. The manner and character of the witnesses testifying in this regard, might largely influence the jury in arriving at a conclusion on the subject."

It is urged by counsel for the defendant in error that there can be no liability on the part of the master for the assault of a servant or employe, unless the assault was made by the employe under either express or implied authority. In this case there is no averment of any express authority to commit the assault upon plaintiff on the part of the defendant, nor do we think that the nature of the employment, to-wit, the collection of a claim, implies any authority upon the part of the servant or employe to commit an assault upon the debtor for failure to pay the claim; so that if this be the correct rule and test of the liability of the master this master is not liable. But we think that if this ever was the rule, it is not now considered by the best authorities the determining factor in cases of this character.

2 Mechem on Agency (2 ed.), Section 1960, lays down this rule:

"It has been held in a great variety of cases that the master is liable for the wanton or malicious acts of his servant if they were committed while the servant was acting in the execution of his authority and within the course of his employment. When this has been said, however, the problem is by no means solved, for the difficult question always remains as to what acts may be deemed to be within the course of his employment within

the meaning of this rule. As in the case already considered of the master's liability for the negligent acts of his servant, it is impossible to lay down any hard and fast rule by which this question can be determined. In many cases no better definition can be given than the words themselves suggest. But, in general terms, it may be said that an act is within the course of employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent and personal motive on the part of the servant to do the act upon his own account."

Now, applying this doctrine to the case under consideration, manifestly the master would not be liable under the first condition, that the act was something fairly and naturally incident to the business, because it can not be claimed in this case that it was fairly and naturally incident to the business of the collector to assault the debtor for his failure to pay. But, under the second proposition, if done while the servant was engaged upon the master's business—and the averment of the petition is to that effect—was it done with a view to furthering the master's interests? The petition avers that the assault was made because the debtor refused to pay, and we can very well see that an ardent and enthusiastic collector might well sup-

pose that an assault made upon the debtor would result in producing the money to pay the claim. He may have been prompted by some impulse or emotion growing out of the failure to secure the money to pay the claim; but, as said by Mechem, that would not render the master immune. Or he may have been prompted by a mistaken or ill-advised notion that this assault upon the debtor would conduce to the collection of the claim. However that may be, it appears to us that this is a sound rule laid down by Mechem, and under the averments of the petition it may be shown that the assault was made by the servant under a mistaken belief that he was serving his master.

It has been said in some cases that the master is liable for the malicious and wilful acts of his servant done in the course of his employment, even though they were expressly forbidden to be done, upon the theory that the master is responsible not only for the acts of his servant, but also responsible for the manner in which the servant performs his duty. The servant's act in punishing persons who annoy him in the performance of the service, or who interfere with or injure the master's property, or his own gratuitous act in using personal violence as a means of coercing the performance of contracts or the payment of debts due the master, has been held in some instances to hold the master liable.

In the case of *The Stranahan Brothers Catering Co.* v. *Coit,* 55 Ohio St., 398, the supreme court held that the master was liable for the malicious acts of his servant whereby others were injured, if the acts were done within the scope of the employ-

ment and in the execution of the service for which he was engaged by the master. Nor will it be any excuse or render the master less liable because the servant who did the malicious act was prompted by malice toward his employer and his action was to gratify his personal malice and with an intent to injure his employer.

In the case of *Gill* v. *Columbus Railway & Light Co.,* 91 Ohio St., 435, the supreme court, in reversing the final judgment of the court of appeals, employed this language in the journal entry:

"This court finds that the fact (as shown by the special findings of fact made by the jury in connection with the general verdict) that plaintiff had alighted from the car of the defendant and had started toward the curb at the time he was assaulted by the employe of the defendant was not conclusive as matter of law, that the plaintiff had then ceased to be a passenger of the defendant, but the issue on that question as made by the pleadings was one of fact to be determined by the jury from all the evidence under proper instructions of the court, and this court, therefore, finds that the court of appeals erred in rendering final judgment in said cause in favor of the said railway and light company."

In the case of *Blakely* v. *Greer et al.,* 7 C. C., N. S., 169, a demurrer was interposed in the trial court. The petition sought to recover for an assault made by the employe of the defendant whereby this employe shot the plaintiff with a pistol which was given to him by his employer for the purpose of protecting the employe against burglars and robbers. The plaintiff had occasion to

go into the depot building where the employe was stationed, on business, and while entering the place he was shot by the employe of the defendant. The demurrer interposed to the petition was sustained by the trial court and this judgment was reversed by the circuit court of Allen county. In the opinion, at page 172, the court distinguishes the *Wetmore case, supra,* from the case under consideration, and quotes some of the language of Judge Minshall in *Nelson Business College Co.* v. *Lloyd, supra,* as follows:

"Notwithstanding some earlier cases, it is, we think, clearly settled that the master is liable for the willful, or even malicious, as well as negligent acts of the servant, done in the course of his employment and within the scope of his authority."

A master is liable for the negligent acts of his employe done in the course of his employment, whether they were authorized or not authorized. To be sure, no master expressly authorizes his servant to be negligent, nor can there be any implied authority upon the part of the master to the servant that he, may be negligent; nevertheless the master is held liable for the negligent acts of his servant although they be not expressly or impliedly authorized. And why should a different rule prevail with reference to wilful acts of the servant?

In the case of *Bucken* v. *South & Western Ry. Co.,* 157 N. C., 443, it was held that the master, a railway company, was liable for the wilful and malicious acts of its foreman and superintendent for an assault and battery made upon an employe of the company, which was made for the purpose of endeavoring to compel the employe to pay a

claim which the foreman and superintendent said
was due to the master company.

In the case of *Bergman* v. *Hendrickson et al.,*
106 Wis., 434, the master, the owner of a saloon,
was held liable for an assault committed by the
bartender upon a customer, made for the purpose
of collecting pay from the customer for liquor
sold to this customer; and it was thus held not-
withstanding the fact that the barkeeper was ex-
pressly prohibited from performing his duty in that
manner. The court, on page 436, says:

"If Backstrom [the barkeeper] committed the
assault for the purpose of collecting payment for
his master's liquor, he was within the scope of his
employment. It was his method of performing the
duty delegated to him, and, although the method
may not have been either expressly authorized or
even contemplated,—nay, although it may have been
expressly prohibited,—yet the master is liable for
the damages caused thereby, provided he has in-
trusted to the servant the duty he was attempting
to perform."

In the case of *McClung* v. *Dearborne,* 134 Pa.
St., 396, it was held that the master was liable for
an assault made by his servants in the house of
the plaintiff, where the servants had gone for the
purpose of removing an organ belonging to their
employer, the defendant. The servants entered
and took the organ by force and violence, and com-
mitted the assault in so doing. The master was
held liable for the trespass although in committing
it the servants violated his express instructions.

In view of the authorities cited we are of the
opinion that the trial court erred in sustaining the

demurrer. For the reasons stated the judgment will be reversed and the cause remanded for further proceedings.

*Judgment reversed, and cause remanded.*

JONES, P. J., concurs.
HAMILTON, J., dissents.