**NOT PRECDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1625
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

NORMA SCHLAGER,
                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-99-cv-20593, 2-11-md-01203 and 2-15-md-01203)
District Judge:  Honorable Harvey Bartle, III

_____

Submitted under Third Circuit LAR 34.1 (a)
on January 12, 2018

Before:  JORDAN and ROTH, <u>Circuit Judges</u> and MARIANI[*], <u>District Judge</u>

(Opinion filed February 8, 2019)

_____

O P I N I O N
_____

ROTH, <u>Circuit Judge</u>.

    Norma Schlager appeals the District Court's determination that she is not entitled

to additional benefits under the Diet Drug Nationwide Class Action Settlement

Agreement (Settlement Agreement) because her claim was untimely.  We will affirm.

---

[*] Honorable Robert D. Mariani, United States District Judge for the Middle District of
Pennsylvania, sitting by designation.

I.

A.

In November 1999, Wyeth, Inc., entered into a nationwide class action settlement regarding its marketing of two "Diet Drugs," fenfluramine (marketed as "Pondimin") and dexfenfluramine (marketed as "Redux").[1] The settlement arose out of multidistrict products liability litigation alleging a link between Diet Drug ingestion and development of valvular heart disease. The Settlement Agreement required Wyeth to contribute funds to a Settlement Trust, which was tasked with administering the claims process, determining eligibility for benefits, and paying benefits to eligible claimants.

A qualifying claimant's recovery under the Settlement Agreement is determined by two damage matrices, Matrix A and Matrix B. Each matrix includes "five 'levels' of possible benefits" corresponding generally with "the type and severity of medical conditions" that the claimant has experienced.[2] Level I and II benefits are called low-level matrix benefits, while level III, IV, and V benefits are characterized as high-level matrix benefits. The claims of "Category One" class members—*i.e.*, claimants with level I or II claims pending as of November 9, 2004—are governed by the Seventh Amendment to the Settlement Agreement, which created a separate claims-processing

---

[1] Over the years, we have repeatedly been asked to resolve issues that have arisen in connection with the Diet Drugs settlement. *See, e.g.*, *In re Diet Drugs Prod. Liab. Litig.*, 706 F.3d 217, 223 (3d Cir. 2013); *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 180-81 (3d Cir. 2008); *In re Diet Drugs Prod. Liab. Litig.*, 401 F.3d 143, 148 (3d Cir. 2005); *In re Diet Drugs Prod. Liab. Litig.*, 385 F.3d 386, 389 (3d Cir. 2004).

[2] *In re Diet Drugs Prod. Liab. Litig.*, MDL No. 1203, 2017 WL 937735, at *1 n.2 & n.4 (E.D. Pa. Mar. 9, 2017) (Dist. Ct. Op.).

and payment process for those low-level claims.[3]  As relevant here, the Seventh

Amendment permits a Category One class member whose medical condition worsens

from a lower severity level to a higher severity level to seek supplemental, high-level

matrix benefits.[4]  To qualify for such benefits, the class member *must* submit a properly

completed "Green Form" to the Trust.  The Green Form must establish, *inter alia*, that

the claimant developed a high-level-qualifying condition by the earlier of (i) December

31, 2011, or (ii) 15 years after his or her last ingestion of Diet Drugs.[5]

Because the Settlement Agreement initially did not impose a Green Form filing

deadline, the District Court issued Pretrial Order 8559, known as "Court Approved

Procedure 16" (CAP 16), on November 8, 2010.  CAP 16 provides as follows:

> ***Green Form Filing Deadline.***  Any Class member who wishes to seek
> Matrix Compensation Benefits must submit a completed and executed Green
> Form Part I and Green Form Part II postmarked or delivered to the Trust no
> later than four years from the later of (a) the entry of an Order approving this
> Procedure or (b) the date on which the Diet Drug Recipient was first
> diagnosed as having the last occurring condition or event upon which the
> claim for Matrix Compensation Benefits is based.  *A Class Member who fails
> to comply with this time period shall not be permitted to seek Matrix
> Compensation Benefits for that condition.*[6]

---

[3] Wyeth and class counsel executed the Seventh Amendment in 2004 due to concerns regarding the adequacy of the settlement fund, the integrity of the numerous low-level claims, and the complications associated with auditing such claims.  *See In re Diet Drugs Prod. Liab. Litig.*, 226 F.R.D. 498, 509-524 (E.D. Pa. 2005) (approving Seventh Amendment).  Category One class members, such as Schlager, were notified and permitted to opt out of the Seventh Amendment.  The claims of Category One class members who did not exercise their opt-out rights were removed from the Trust for processing by a separate Seventh Amendment Fund Administrator.

[4] *In re Diet Drugs Prod. Liab. Litig.*, 2017 WL 937735, at *1-*2.

[5] App. 1447 (Settlement Agreement, Seventh Amendment § IX.A.1); *In re Diet Drugs Prod. Liab. Litig.*, 385 F.3d at 390.

[6] App. 502-05 (emphasis added).

In sum, CAP 16 bars a Category One class member who has not submitted a completed Green Form by either November 8, 2014, or within four years of being diagnosed with a high-level condition—whichever comes later—from obtaining high-level matrix benefits.

B.

Schlager took Diet Drugs in the 1990s.  In April 2003, she submitted a Green Form to the Trust seeking level II matrix benefits.  She did not opt out of the Seventh Amendment.  As a result, in March 2005, the Trust informed her that she qualified as a Seventh Amendment Category One class member.  After processing her claim, the Fund Administrator sent Schlager a letter in March 2008 informing her that she was entitled to a $2,000 "Minimum Payment Amount."[7]

The following year Schlager's medical condition allegedly worsened.  In April 2009, Ron Schlager, Esq., Schlager's son and attorney throughout these proceedings, sent two letters to class counsel.  He advised that Schlager "may require heart surgery" for "covered complications" and inquired whether the related medical costs would be covered by the Settlement Agreement.[8]  On September 2, 2010—two months before the District Court approved CAP 16—Schlager underwent valvular heart surgery.

Years passed before Schlager (or her son) informed the Trust of her heart surgery or sought supplemental benefits in connection with the surgery.  In April 2014, Ron

---

[7] App. 1081-90. The letter advised Schlager of her ability to obtain high-level matrix benefits in the event her condition worsened by the cut-off date, but cautioned that the letter provided only a summary of her anticipated benefits and that her "rights and obligations" were "set forth in the 7th Amendment, which governs."  App. 1082-83.

[8] App. 1031-32, 35.

Schlager emailed the Trust a copy of Schlager's operative report, without more. He did not formally request high-level matrix benefits or submit a Green Form. Norma Schlager suffered a stroke two months later. In January 2015—more than two months after the filing deadline—Schlager submitted to the Trust an incomplete Green Form seeking level III benefits.[9] The cardiologist certification portion of the Form, which is required under the terms of the Settlement Agreement, was left entirely blank. In March 2015, the Trust advised Schlager that her claim was being tentatively denied because she had not submitted a completed Green Form by the CAP 16 filing deadline (*i.e.*, November 8, 2014).[10] In June 2015, after Schlager contested the tentative denial, the Trust issued a "final determination" in which it denied Schlager's claim for benefits as untimely.[11]

Schlager appealed to the District Court and requested that her challenge to the Trust's final determination proceed to arbitration, as contemplated by the Settlement Agreement. The court referred her claim to arbitration. On October 27, 2015, before the arbitration had begun but well after the filing deadline, Schlager submitted a completed Green Form to the Trust, again seeking level III benefits in connection with her heart surgery.[12] Recognizing the untimeliness of her claim, Schlager filed a "Motion/Petition for Relief" from the filing deadline set out in CAP 16. The District Court denied the

---

[9] App. 100-31. The Green Form indicates that Ron Schlager filled out and submitted the form on his mother's behalf because she had "become incapacitated." App. 101.

[10] App. 498-501. The Trust also rejected the claim on the ground that Schlager had not proven that she had ingested Diet Drugs. After she submitted additional evidence, however, the Trust abandoned this rationale and accepted her assertion that she had ingested Diet Drugs. *In re Diet Drugs Prod. Liab. Litig.*, 2017 WL 937735, at *3 n.5.

[11] App. 543-50.

[12] App. 170-85.

5

motion in a pretrial order (PTO 9457), concluding that her claim was time-barred.[13] The arbitration hearing took place in August 2016. The arbitrator issued a report on September 19, 2016, upholding the Trust's determination that Schlager's claim for benefits was untimely. On March 9, 2017, the District Court issued an order (PTO 9485), affirming the arbitrator's ruling that Schlager's claim was untimely and that she was not entitled to equitable tolling of the filing deadline.[14] Schlager now appeals.

## II.[15]

At issue on appeal is Schlager's entitlement to Seventh Amendment high-level matrix benefits at severity level III. The Trust, arbitrator, and District Court concluded that she was not entitled to those benefits because her claim was untimely. We agree.

Schlager became eligible to seek high-level matrix benefits on September 2, 2010, the date of her valvular heart surgery. To obtain those benefits, she was required, under the terms of CAP 16, to submit a completed Green Form to the Trust by no later than November 8, 2014.[16] Schlager thus had more than four years and two months from the

---

[13] App. 26-40. Schlager sought to appeal PTO 9457 to this Court, but we dismissed the appeal on jurisdictional grounds. App. 42-43.

[14] *In re Diet Drugs Prod. Liab. Litig.*, 2017 WL 937735, at *1-*6 (PTO 9485).

[15] The District Court had jurisdiction under 28 U.S.C. § 1332. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. When reviewing a district court's order upholding an arbitration award, we review the district court's factual findings for clear error and we review its legal conclusions de novo. *China Minmetals Materials Imp. & Exp. Co., v. Chi Mei Corp.*, 334 F.3d 274, 278 (3d Cir. 2003); *see In re Diet Drugs Prod. Liab. Litig.*, 706 F.3d at 223. And we review a district court's "exercise of the equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 184 n.10.

[16] *See* CAP 16, App. 502-05 ("A Class Member who fails to comply with this time period shall not be permitted to seek Matrix Compensation Benefits for that condition.").

date of her surgery to perfect her claim for benefits. It is undisputed that she did not do so. In fact, she did not submit a completed Green Form until October 27, 2015, nearly a year after the applicable filing deadline. Accordingly, Schlager's claim for high-level matrix benefits was properly denied as time-barred.

Seeking to overcome this conclusion, Schlager contends that she should be excused from the filing deadline because she did not receive adequate notice of CAP 16,[17] as required by Federal Rule of Civil Procedure 23(e) and principles of due process. The arbitrator rejected this argument, and the District Court affirmed. Both explained that supplemental, class-wide notice of an amendment to a settlement agreement is required only where the amendment has a "material adverse effect on the rights of class members."[18] The District Court explained that CAP 16 did not adversely affect Schlager's rights because, absent CAP 16, her claim would be governed by Pennsylvania's four-year statute of limitations for contract claims, which began running on the date of Schlager's surgery (*i.e.*, September 2, 2010).[19] As a result, the court concluded that supplemental notice was unnecessary because CAP 16 afforded Schlager "nearly two more months to apply for compensation than she otherwise would have had

---

[17] CAP 16 was published on the public *Diet Drugs* docket and on the Trust's website.
[18] *In re Diet Drugs Prods. Liab. Litig.*, 2017 WL 937735, at *4-*5; *see, e.g.*, *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313-14 (D.D.C. 2015) (citing authorities). Schlager concedes that supplemental notice is required only in these circumstances. Op. Br. at 30 (quoting *In re Diet Drugs Prod. Liab. Litig.*, 2010 WL 2735414, at *6 (E.D. Pa. July 2, 2010)). We will therefore accept that proposition for purposes of this appeal.
[19] *In re Diet Drugs Prod. Liab. Litig.*, 2017 WL 937735, at *5 (citing 42 Pa. C.S. § 5525).

7

under Pennsylvania law."[20]  Because Schlager does not contest (or even address) the court's conclusion that, but for CAP 16, her claim would have been subject to the four-year statute of limitations, we conclude for purposes of this appeal that the statute of limitations would have applied to her claims.[21]  We thus affirm the District Court's conclusion that Schlager received sufficient notice because CAP 16 did not adversely affect her rights, but rather extended her deadline for filing a claim for benefits.

Finally, Schlager argues that the arbitrator and District Court clearly erred by concluding that her June 2014 stroke did not equitably toll the filing deadline.  We have held that equitable tolling is warranted "(1) if the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, (2) if the plaintiff in some extraordinary way has been prevented from asserting his or her rights, or (3) if the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."[22]  Schlager has not made such a showing.  Before her stroke, Schlager had more than three years and nine months to file

---

[20] *Id.*

[21] Schlager repeatedly argues that CAP 16 shortened the Green Form filing deadline, without acknowledging the District Court's conclusion that CAP 16 actually extended the deadline given the otherwise applicable four-year limitations period.  Schlager has thus waived any challenge to the applicability of Pennsylvania's statute of limitations to her claim for benefits.  *See, e.g.*, *Kost v. Kozakiewicz*, 1 F.3d 176, 182-83 (3d Cir. 1993).  She mentions the statute of limitations for the first time in her reply brief, contending only that Wyeth stipulated in 2000 that it will not assert any statute of limitations defense.  *See* Reply Br. at 14 (quoting PTO 1415, App. 1228).  But the cited stipulation does not apply to Schlager.  Rather, it applies only to a class member "who timely and properly exercises [his or her] back-end opt-out rights and who initiates a lawsuit against [Wyeth] . . . within one year from the date on which the back-end opt-out right is exercised." App. 1227-28.  Schlager did neither of those things.

[22] *In re Cmty. Bank of N. Va. Mortg. Lending Pract. Litig.*, 795 F.3d 380, 400 (3d Cir. 2015) (cleaned up); *see Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) ("Equitable tolling is an extraordinary remedy which should be extended . . . sparingly.").

a claim for benefits. And after her stroke, Schlager had more than four additional months to file a timely claim. Significantly, Schlager has been assisted by her son, an attorney, since she first began seeking benefits. The record does not establish that he was incapacitated or prevented from preparing and filing a Green Form on her behalf, as he did in January and October 2015, at any point during the fifty-month filing period. Moreover, Schlager did not submit a fully completed Green Form until more than seven months after the Trust first notified her that the untimely Green Form she had submitted in January 2015 "was neither completed nor signed by" a cardiologist. Thus, Schlager did not act with the diligence required to receive the benefit of equitable tolling.[23] For these reasons, the District Court did not err in concluding that "the record does not demonstrate how or why [Schlager's] medical condition prevented her from submitting a completed Green Form within the deadlines set forth by CAP 16."[24]

## III.

For the foregoing reasons, we will affirm the District Court's orders denying Ms. Schlager's claim for benefits as untimely.[25]

---

[23] *See, e.g.*, *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 163 (3d Cir. 2016).
[24] *In re Diet Drugs Prod. Liab. Litig.*, 2017 WL 937735, at *5.
[25] We have considered all remaining arguments in Schlager's briefs and conclude that they lack merit and do not warrant further discussion.